775 A.2d 120 (2001)
Deborah SCHORR, Plaintiff-Respondent,
v.
Harvey SCHORR, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 2001.
Decided June 8, 2001.
*121 Andrew L. Rochester Haddonfield, for appellant (Adinolfi and Spevak, attorneys; Mr. Rochester, on the brief).
Deborah Schorr, respondent, pro se.
Before Judges KING, COBURN and AXELRAD.
The opinion of the court was delivered by AXELRAD, J.T.C. (temporarily assigned).
Defendant Harvey Schorr appeals Judge Donaldson's order declaring that the obligations undertaken by him in the parties' property settlement agreement were solely in the nature of support obligations and nondischargeable in bankruptcy. On appeal, he asserts that his obligations were equitable distribution and dischargeable and that the court should have held a plenary hearing on the issue of dischargeability.
The parties were married on August 29, 1976 and divorced on June 19, 1996. The parties negotiated and executed a property settlement agreement in connection with their divorce. Under Article II, SUPPORT AND MAINTENANCE OF HUSBAND AND WIFE, defendant agreed to pay plaintiff $300 per week in alimony; to pay all outstanding medical, dental, vision, prescription and related expenses incurred by plaintiff as of the date of the final judgment of divorce; and once his obligation to pay plaintiff's health insurance premium ceased, to pay plaintiff an additional $100 per month to be applied toward reduction of the outstanding principal balance *122 on his obligations under Article IV, paragraph 8. Under Article III, INSURANCE TO SECURE HUSBAND'S OBLIGATIONS, defendant agreed to maintain a term life insurance policy upon his life in the amount of $200,000, irrevocably naming plaintiff as beneficiary until such time as he satisfied the obligations listed in Article IV, paragraph 8 and all third party debts for which plaintiff might be responsible. Once those debts were satisfied, he would only be obligated to pay for the premium as to $150,000 worth of coverage, and plaintiff had the option of paying the additional premium on a $200,000 policy or accepting the lower amount of coverage which defendant was required to provide. Under Article IV, EQUITABLE DISTRIBUTION OF PROPERTY, paragraph 8, defendant agreed to pay in installments a total of $45,518 to plaintiff, which represented her share of his accounting practice. Under Article V, INDEBTEDNESS, defendant agreed to be responsible for all debts of the parties, or of either of them, incurred as of the date of the final judgment of divorce.
Under Article XI, GENERAL PROVISIONS, paragraph 12, HUSBAND'S BANKRUPTCY, the parties expressly provided for the possibility of defendant filing a bankruptcy petition after execution of the agreement:
Husband represents and warrants to Wife that he has no present intention to file a petition in bankruptcy and agrees that to the extent he may later decide to do so, he will not seek to discharge any of his obligations to Wife hereunder and that this Agreement shall remain in full force and effect. Husband further agrees and recognizes that Wife is relying on all of Husband's payment and indemnification obligations to her hereunder for her support and maintenance, regardless of the characterization of a particular obligation as support, alimony, equitable distribution or otherwise. Accordingly, should Husband file a petition in bankruptcy and seek to discharge any of his obligations to Wife hereunder, all of his obligations hereunder including, but not limited to, alimony, support, equitable distributions, payment of insurance and payment of child support and Husband's relief of debt, shall be considered in determining the appropriate post-petition level of alimony/support Husband will be required to pay to Wife.
Paragraph 8, HEADINGS FOR REFERENCE ONLY, provides that the section headings are inserted "for convenience and shall not affect the meaning, construction, scope or effect of this Agreement."
On January 22, 1998 defendant filed a petition for protection under Chapter 13 of the United State Bankruptcy Code, and his obligations under the property settlement agreement were stayed. By consent order dated May 29, 1998, the Bankruptcy judge vacated the stay for the Family Part Judge to conduct a hearing to determine the nature of defendant's obligations under the agreement and to specifically determine which of the obligations were in the nature of equitable distribution and dischargeable and which were in the nature of support and nondischargeable.
Counsel for both parties agreed to submit briefs outlining their respective positions regarding the effect of defendant's bankruptcy on his obligations under the property settlement agreement. Counsel for defendant did not request a plenary hearing.
In a letter opinion dated November 1, 1999, Judge Donaldson found that "the obligations which the Defendant undertook in their Property Settlement Agreement were solely in the form of support obligations" and, therefore, his obligations to plaintiff were not dischargeable in bankruptcy. *123 On January 21, 2000 Judge Donaldson denied defendant's motion for reconsideration.
Defendant contends that his obligations under the property settlement agreement are not support-related. Pursuant to 11 U.S.C.A. § 523(a)(5),
[a] discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that ... such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support....
Alimony and support obligations may not be discharged in bankruptcy. Stein v. Fellerman, 144 N.J.Super. 444, 449, 365 A.2d 1382 (App.Div.1976), certif. denied, 73 N.J. 50, 372 A.2d 315 (1977). Portions of a property settlement agreement not viewed as being in the nature of alimony, such as debts assumed as part of equitable distribution, are dischargeable. Ibid. The burden of proof is on the party claiming the liability is nondischargeable, plaintiff in this case. In re Midnet, 84 B.R. 776, 778 (Bankr.M.D.Fla.1988); Bankruptcy Rule 4005.
In making its determination, the courts are not bound by the label which the parties ascribe to any provision in the agreement. See Kubera v. Kubera, 200 B.R. 13, 16 (W.D.N.Y.1996). In determining whether obligations arising out of a divorce settlement are in the nature of support, a court must "look beyond the label attached to an obligation by a settlement agreement to examine its true nature." Gianakas v. Gianakas, 917 F.2d 759, 762 (3d Cir.1990). The intent of the parties at the time of the settlement agreement must be discerned. Id. (citing In re Yeates, 807 F.2d 874, 878 (10th Cir.1986)).
In order to ascertain the parties' intent at the time of the settlement, the court must analyze the following three principle factors:
1) the language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary;
2) the parties' financial circumstances at the time of the settlement; and
3) the function served by the obligation at the time of the divorce or settlement.

[Id. at 762-63].
Applying these legal principles to this matter, Judge Donaldson correctly concluded that plaintiff carried her burden of proving that defendant's obligations are in the nature of spousal support or maintenance and are not dischargeable.
With regard to the first factor, the language of the property settlement agreement is eminently clear as to the intention of the parties. Contrary to defendant's assertion, the fact that some of the obligations that he wished to discharge were contained under the heading "Equitable Distribution" is not dispositive of the issue of dischargeability. Article XI, paragraph 8 expressly provides that the parties intended the section headings for reference only and not to have any substantive bearing on the construction of the agreement.
Moreover, when the parties entered into the agreement, they clearly contemplated the potential and effect of defendant filing for bankruptcy at some point in the future and the need for plaintiff to be supported *124 regardless of defendant's bankruptcy status. Plaintiff's own certification and that of her attorney at the time of the divorce, James Thompson, submitted in connection with this matter, express similar understandings as to the support-related nature of the agreement. Specifically, Thompson certified that "it was clearly the intent of the parties that all of the defendant's obligations to the plaintiff under the Agreement were necessary as spousal support for the plaintiff, regardless of the classification of the obligation as alimony or equitable distribution" as evidenced by the fact that the "various payments and obligations were inexorably intertwined."
The express language of Article XI provides a sufficiently conclusive answer as to the nature of defendant's obligations under the property settlement agreement as support-related. Additionally, the remaining two factors of the Gianakas test, the parties' financial circumstances at the time of the settlement and the function served by the obligation at the time of the settlement, also support the plaintiff's position. At the time of the divorce, plaintiff suffered from various illnesses, including asthma, chronic bronchitis, sciatica and gastroesophageal reflux disease. She also alleged a permanent disability as a result of physical abuse at the hands of defendant. Plaintiff was unemployed at the time of the divorce and left the marriage with no assets other than the tangible personal property which each party retained. She did not have a pension, 401K, property or items of value, other than the $300 per week she would receive from defendant as alimony and her share of his practice, which she was to receive in installments over the course of seven years. In comparison, defendant was a certified public accountant in an established practice who was able to provide a very comfortable lifestyle for his family throughout the marriage, which included extensive travel throughout the United States and Europe, costly summer camps for their children, new luxury automobiles approximately every three years and an expensive home.
After analyzing the functions served by the obligations in the agreement, we are satisfied that the obligations were intended to provide for and maintain plaintiff's daily necessities and support. As explained by plaintiff in her certifications, the overall monetary value of the settlement, including the insurance coverage, the assumption of pre-judgment debts, and the schedule of installment payments for her portion of defendant's accounting practice, was carefully planned and timed to allow defendant maximum flexibility of payment while providing plaintiff a source and means of supporting and maintaining herself. Plaintiff, upon leaving the marriage, had no way of providing these needs for herself. "An obligation that serves to maintain daily necessities such as food, housing and transportation is indicative of a debt intended to be in the nature of support." Gianakas, supra, 917 F.2d at 763 (citing In re Yeates, supra, 807 F.2d at 879).
At oral argument, plaintiff emphasized that Article XI, paragraph 12 of the property settlement agreement was facilitated by defendant's consistent threats of bankruptcy and leaving her destitute and that his bankruptcy was precipitated by her enforcement action. In this provision, defendant specifically acknowledged that plaintiff was relying on "all of [his] payment and indemnification obligations to her hereunder for her support and maintenance," even those items listed under the heading of "Equitable Distribution." Common sense dictates that neither party intended that the seven-year installment payment of plaintiff's interest *125 in defendant's accounting practice be deemed equitable distribution. Otherwise, such obligation could be dischargeable in bankruptcy long before plaintiff ever reaped the benefit of the deal, leaving her sick and without a means to support herself. To now permit defendant to renege on his express agreement would be contrary to case law and an injustice to plaintiff who is wholly dependent upon her former spouse.
Moreover, there is no merit to defendant's claim that Judge Donaldson should have sua sponte ordered a plenary hearing in order to determine the nature of the obligations. Both parties, through counsel, agreed that the matter be determined on their submissions without testimony. Moreover, the agreement itself does not support a claim as to the existence of a factual dispute and the necessity for a plenary hearing as to each of the provisions of the agreement. Counsel for defendant baldly asserts that his client was not represented by counsel at the time of the agreement, though he had been represented during the divorce action, and may not have understood all of its terms. Both the acknowledgments in the agreement and defendant's actions belie that claim. There were additions and deletions made and initialed which indicate that defendant, a CPA, read and understood the entire agreement and his obligations thereunder. Additionally, plaintiff claims that defendant drafted part of the agreement.
At oral argument, plaintiff stressed that she was destitute and living with family members and friends. Defendant must be held accountable for his obligations under the property settlement agreement that he executed five years ago. Plaintiff is entitled to immediate enforcement of this agreement.
We affirm and remand to Judge Donaldson, who is familiar with this case, for an enforcement hearing within thirty days.