894 A.2d 1 (2006)
384 N.J. Super. 17
Ivette LARBIG, Plaintiff-Respondent,
v.
Roland LARBIG, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 17, 2006.
Decided February 2, 2006.
*2 Neal H. Flaster, Livingston, argued the cause for appellant (Fell Flaster, attorneys; Mr. Flaster, on the brief).
William E. Reutelhuber argued the cause for respondent (Copeland, Shimalla & Wechsler, Warren, attorneys; Amy Wechsler, of counsel; Mr. Reutelhuber, on the brief).
Before Judges PARKER, C.S. FISHER and YANNOTTI.
The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, we affirm the trial judge's denial of a motion for a modification of defendant's obligations to make various monthly payments to plaintiff. The trial judge did not abuse his discretion in leaving undisturbed the alimony and child support obligations because defendant's motion was filed only twenty months after entry of the judgment of divorcea fact that strongly suggested defendant's reduced income had not become permanent. The judge also correctly refused to modify defendant's additional obligation to pay plaintiff $2,600 per month for five years because that obligation was in the nature of equitable distribution, which may not be modified on a claim of changed circumstances.

I
The parties were married on August 20, 1986. That marriage was dissolved by way of a judgment of divorce entered on June 19, 2002, which incorporated the terms of the parties' property settlement agreement (PSA). As relevant to the issues presented, the PSA required defendant to pay plaintiff $10,000 per month in alimony, $2,000 per month in child support,[1] and $2,600 per month in equitable distribution for a period of five years. Approximately, twenty months after the entry of the judgment of divorce, defendant Roland Larbig (defendant) moved for the modification of these alimony, child support and equitable distribution obligations. Defendant claimed that his payments should be reduced because his business was then in decline and his income significantly diminished as a result.
For reasons set forth in a written decision, Judge Thomas H. Dilts denied defendant's motion in its entirety and granted the motion of plaintiff Ivette Larbig (plaintiff) for counsel fees. An order memorializing these determinations, and others, was entered on April 16, 2004.
Defendant's timely motion for reconsideration was denied for reasons set forth by Judge Dilts in an oral decision on June 11, 2004. An order denying that motion was entered the same day.
Defendant appealed, seeking our review of the orders of April 16, 2004 and June 11, 2004, and raising the following issues for our consideration:

*3 I. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR MODIFICATION OF ALIMONY AND CHILD SUPPORT BASED ON CHANGED CIRCUMSTANCES, AS DEFENDANT HAS SET FORTH A PRIMA FACIE BASIS FOR MODIFICATION IN HIS MOVING PAPERS.
II. WHERE THERE ARE MATERIAL ISSUES OF FACT IN DISPUTE PRESENTED IN CERTIFICATIONS AND EXHIBITS FILED WITH THE COURT IN CONNECTION WITH AN APPLICATION FOR MODIFICATION, THE TRIAL COURT IS MANDATED TO HOLD A PLENARY HEARING TO RESOLVE THOSE ISSUES.
III. THE STANDARD OF REVIEW FOR MODIFICATION OF ASSETS WHICH ARE CHARACTERIZED BY THE PARTIES AS BEING BOTH SUPPORT AND EQUITABLE DISTRIBUTION SHOULD BE THAT OF "CHANGED CIRCUMSTANCES" UNDER LEPIS,[2] AND NOT THAT SET FORTH UNDER R. 4:50-1, RELIEF FROM FINAL JUDGMENT OR ORDER.
IV. THE TRIAL COURT'S REFUSAL TO CONSIDER LATE PAPERS SUBMITTED BY DEFENDANT SHOULD HAVE BEEN CONSIDERED BY THE COURT.
V. THE TRIAL COURT IN AWARDING ATTORNEY'S FEES TO THE NON-MOVING PARTY ACTED ARBITRARILY, MADE FACTUAL ASSUMPTIONS NOT SUPPORTED BY THE RECORD, AND FAILED TO COMPLY WITH APPLICABLE COURT RULES AND CASE LAW.
After carefully reviewing the record, we conclude that the arguments contained in Points IV and V are without sufficient merit to warrant discussion in a written decision. R. 2:11-3(e)(1)(E). We also reject the remaining arguments for the following reasons.

II
In seeking a modification of his alimony and child support obligations, defendant argued that the fortunes of his business had severely declined since the entry of the judgment of divorce and that this alleged changed circumstance warranted a downward modification or, at least, triggered a right to compulsory discovery and a plenary hearing on the subject. Judge Dilts disagreed.
Whether an alimony obligation should be modified based upon a claim of changed circumstances rests within a Family Part judge's sound discretion. Innes v. Innes, 117 N.J. 496, 504, 569 A.2d 770 (1990); Storey v. Storey, 373 N.J.Super. 464, 470, 862 A.2d 551 (App.Div.2004); Steneken v. Steneken, 367 N.J.Super. 427, 434, 843 A.2d 344 (App.Div.2004), aff'd as modified, 183 N.J. 290, 873 A.2d 501 (2005). Each and every motion to modify an alimony obligation "rests upon its own particular footing and the appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters." Martindell v. Martindell, 21 N.J. 341, 355, 122 A.2d 352 (1956); see also Rolnick v. Rolnick, 262 N.J.Super. 343, 359, 621 A.2d 37 (App.Div.1993).
Here, the parties hotly contested whether ASI, Inc., defendant's business, had truly fallen on hard times. In this regard, the judge observed that plaintiff had asserted, among other things, that
since the divorce . . . [defendant] hired a new chief financial officer who "re-did" *4 his books for the corporation[.] [She also] question[ed] his business practices [and] argue[d] that the numbers he present[ed] to the court do not tell the whole story because in 2002 he increased [ASI's] office space, hired a new staff, doubled his travel and entertainment expenses all of which indicate that he is not bankrupt.
Plaintiff also alluded to the fact that the PSA acknowledged a downturn in ASI's fortunes,[3] and that the circumstances presented by defendant in support of his motion "mirror[ed] the situation at the time of the divorce." In short, plaintiff disputed defendant's contentions and alternatively argued that circumstances had not changed. Defendant claimed, on the other hand, that things had changed for the worse at ASI, that his income had dramatically decreased, and that nearly all his income would, absent a downward modification, be expended on the monthly obligations imposed upon him by the PSA.
Instead of conducting a hearing to resolve the parties' factual disputes about ASI's true condition and defendant's ability to pay his support obligations, Judge Dilts correctly focused on the fact that defendant's motion was filed a mere twenty months after the parties' execution of the PSA and the entry of the judgment of divorce.[4] In light of the timing of defendant's motion, Judge Dilts concluded that defendant had failed to demonstrate that, even if ASI's condition was as he alleged, the change was anything other than temporary. Lepis, supra, 83 N.J. at 151, 416 A.2d 45 ("Courts have consistently rejected requests for modification based on circumstances which are only temporary. . . .").[5]
There is, of course, no brightline rule by which to measure when a changed circumstance has endured long enough to warrant a modification of a support obligation. Instead, such matters turn on the discretionary determinations of Family Part judges, based upon their experience as applied to all the relevant circumstances presented, which we do not disturb absent an abuse of discretion. We are satisfied that, in finding the alleged changed circumstance to be temporary at that point in time, Judge Dilts did not abuse his discretion. The timing of the motion certainly warranted that conclusion. In the same vein, Judge Dilts correctly determined not to permit discovery or a plenary hearing. Neither compulsory discovery nor a plenary hearing is required until a movant provides sufficient evidence of a material *5 changed circumstance. Lepis, supra, 83 N.J. at 157, 416 A.2d 45.
We also reject defendant's argument that a lesser period of decreased income should constitute a temporary change when the obligor is self-employed. We reject this contention because it is the self-employed obligor who is in a better position to present an unrealistic picture of his or her actual income than a W-2 earner. In light of this self-evident fact, it would seem, as a general proposition, that what constitutes a temporary change in income should be viewed more expansively when urged by a self-employed obligor. In any event, under either approach, we are satisfied that Judge Dilts did not abuse his discretion in concluding that defendant had alleged only a temporary change in circumstances.

III
Defendant also argues that Judge Dilts incorrectly viewed his obligation to pay plaintiff $2,600 per month for a period of five years as equitable distribution. Because of that determination, the judge concluded that defendant's motion, insofar as it related to this obligation, was not subject to modification based upon changed circumstances but bound to the requirements of R. 4:50 and that, so viewed, defendant's motion did not provide an adequate basis for relief. We agree with the judge in all these respects.
The exchange of assets and defendant's promise to pay plaintiff $2,600 per month for five years represents part of the parties' agreement to equitably distribute their marital property. This is unambiguously revealed by the covenants contained in paragraph 4.3 of the PSA:
In consideration for the husband's exclusive ownership of the co-op, ASI's redemption of the wife's shares of ASI, and the wife's exclusive ownership of the marital home, the husband acknowledges and agrees that he owes to the wife the sum of $135,800.00, which the husband shall pay to the wife over a five (5) year period, with interest. The payment shall be in the amount of $2,600.00 per month, for a sixty (60) month period beginning July 10, 2002. These payments shall be deemed non-taxable to the wife and shall not be dischargeable in bankruptcy as they are akin to non-modifiable support. The husband shall pledge his interest in ASI as security related to the outstanding balance due and owing to the wife, which shall be determined pursuant to Paragraph 4.4. Agreement to the terms as set forth in this paragraph were a critical element of the entire settlement, which settlement would not have been entered into absent these assurances as set forth.
As can be seen, in exchange for defendant's promise to pay the sums referred to in this paragraph plaintiff agreed to transfer her interests in a co-op and her interest in ASI to defendant. Taken at face value, this provision militates in favor of a conclusion that the $2,600 monthly payments represent an aspect of equitable distribution.
Despite these unambiguous terms, defendant nevertheless argues that the following single sentence contained in paragraph 4.3 demonstrates that the payments are, in reality, a form of support: "These payments shall be deemed non-taxable to the wife and shall not be dischargeable in bankruptcy as they are akin to non-modifiable support." This sentence, however, is wholly inconsistent with the undertaking otherwise described in the paragraph and provides no legitimate insight into the parties' intentions about the meaning of the $2,600 monthly payments. Indeed, that particular sentence is internally inconsistent, because the parties attempted, by *6 way of this sentence, to free plaintiff of the obligation to pay taxes on these payments,[6] to render the payments non-dischargeable in bankruptcy, and to insulate the obligation from modification. Since alimony is taxable, and modifiable, but not dischargeable, the statements that these payments would be neither taxable nor modifiable, and also non-dischargeable in bankruptcy, are incongruous. In addition, since the statement falls within a provision that otherwise unambiguously deals with equitable distribution issues, and in a section of the PSA that deals only with equitable distribution issues, it must be concluded, as we hereafter explain, that the agreement contained in paragraph 4.3, even under the loose federal standard applicable in determining when such obligations are dischargeable, is not ambiguous and, as a matter of law, cannot be interpreted as an agreement to pay alimony, maintenance or support.
In other words, defendant argues that the statement in paragraph 4.3 about the non-dischargeability of his obligation to pay plaintiff $2,600 per month would cause a determinationshould in the future there be filed a bankruptcy petitionthat the obligation is in the nature of alimony, maintenance and support. See 11 U.S.C.A. § 523(a)(5); In re Gianakas, 917 F.2d 759, 761-62 (3rd Cir.1990). Defendant argues that such an interpretation should now be adoptedeven though no bankruptcy petition has been filedas a means of providing insight into the parties' intentions. Assuming this is a sensible approach to the interpretation of paragraph 4.3 for present purposes, we nevertheless reject defendant's contention that the parties' statement about non-discharability demonstrates that the $2,600 monthly obligation is actually in the nature of alimony, maintenance and support.
In the bankruptcy setting, it is federal law, and not state law, that determines the nature of the obligations contained in the PSA. Winegarden v. Winegarden, 316 N.J.Super. 52, 60, 719 A.2d 678 (App.Div.1998). That question is governed by the intent of the parties. Gianakas, supra, 917 F.2d at 762.
The Court of Appeals for the Third Circuit described the manner of ascertaining the intent of the parties, in this context, in the following way:
First, the court must examine the language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary.... Because the language of the agreement alone may not provide a sufficiently conclusive answer as to the nature of an obligation, the second indicator to which we must look to assist in ascertaining the parties' intent is the parties' financial circumstances at the time of the settlement. . . . Third, the court should examine the function served by the obligation at the time of the divorce or settlement.
[Id. at 762-63.]
The initial inquiry, then, relates to whether the "language and substance" of the PSA "alone ... provide a sufficiently conclusive answer as to the nature" of these payments. Ibid. In other words, Gianakas's three-part test first requires a determination as to whether the PSA is ambiguous. If it is, then there must be resort to extrinsic evidence, but, if not, the agreement should be enforced as written.
Assuming this approach should be presently applied, we conclude that it is the *7 PSA's clarity about all the resolved facets of this matrimonial dispute that differentiates the case at hand from other decisions in which promises that ostensibly appeared to constitute equitable distribution provisions have been determined to be in the nature of alimony, maintenance or support. In Gianakas, for instance, the property settlement agreement contained the debtor's obligation to pay alimony for a limited period of time, and also required the debtor's conveyance of the marital home to his ex-wife. And, while the ex-wife agreed to pay the first mortgage on the former marital home, as well as a mortgage that encumbered an attached garage, the debtor assumed responsibility for the second mortgage on the former marital home. Upon the filing of the bankruptcy petition, the parties disputed whether the debtor's agreement to make the second mortgage payments constituted an obligation that was in the nature of alimony, maintenance and support. Because the agreement did not clearly define that obligation as either equitable distribution or alimony, and because the obligation itself did not provide a clear understanding of its proper categorization, the court of appeals recognized that the parties' intent could not be ascertained without resort to extrinsic evidence.
The matter at hand is also unlike the circumstances discussed in our decisions in Schorr v. Schorr, 341 N.J.Super. 132, 775 A.2d 120 (App.Div.2001) and Winegarden, supra, 316 N.J.Super. 52, 719 A.2d 678. In Schorr, the settlement agreement described a lump sum payment as equitable distribution. We affirmed the trial judge's determination that this obligation was actually in the nature of alimony, maintenance or support, because, unlike the case at hand, the agreement in Schorr expressly stated that the debtor "recognize[d] that Wife is relying on all of Husband's payment and indemnification obligations to her hereunder for her support and maintenance, regardless of the characterization of a particular obligation as support, alimony, equitable distribution or otherwise." Id. at 136, 775 A.2d 120 (emphasis added). And, in Winegarden, we recognized that the debtor's agreement to indemnify and hold his ex-wife harmless from certain debts constituted support or maintenance because the specific alimony obligation could not adequately support the ex-wife if she was also rendered liable for those debts in a manner not anticipated by the settlement agreement. 316 N.J.Super. at 61, 719 A.2d 678. In both Schorr and Winegarden, as in Gianakas itself, the lack of certainty about the language of the agreements there examined required consideration of the other two Gianakas factors and a venture into extrinsic evidence that often requires a plenary hearing.
Unlike those cases, the PSA in question in this matter is not ambiguous. Article 3 of the PSA deals exclusively with "support and maintenance," as its title expresses. Within Article 3 are defendant's promises to pay $10,000 per month in alimony and $2,000 per month in child support. On the other hand, Article 4 deals with the division of the parties' property. And, within Article 4, the parties unambiguously agreed that defendant had waived his interest in the marital home; that plaintiff waived her interest in a co-op and in ASI; and that, in consideration for this exchange, "the husband acknowledges and agrees that he owes to the wife the sum of $135,800.00, which the husband shall pay to the wife over a five (5) year period, with interest." To now argue, in the face of these clear and carefully expressed delineations, that defendant agreed to pay to plaintiff, beyond the permanent alimony obligation of $10,000 per month, an additional $135,800 payable in $2,600 monthly installments over a five-year period as alimony defies logic. In the context of the great weight of the other provisions of the *8 PSA, including the statement in the same sentence relied upon by defendant that plaintiff would not be obligated to pay taxes on those paymentsa statement wholly inconsistent with the contention that these payments represented a form of alimony, maintenance or supportdemonstrates that the parties' incongruous comments about this obligation being non-dischargeable in bankruptcy cannot constitute the type of statement that provides legitimate or reliable insight into the parties' true intent. Nowhere in the PSA is there any indication that these payments were required or intended for plaintiff's support or maintenance, as was the case in Schorr. The inclusion of this hopeful statement (hopeful, that is, from plaintiff's standpoint should a bankruptcy petition be filed) cannot alter the true meaning of the parties' PSA as revealed by what is otherwise contained within its four corners.
We conclude that defendant's obligation to pay plaintiff $2,600 per month for five years represents his payment of an aspect of equitable distribution and cannot be characterized as alimony, maintenance or support. As a result, defendant was obligated to meet R. 4:50's requirements in order to obtain relief from that obligation. Rosen v. Rosen, 225 N.J.Super. 33, 35-36, 541 A.2d 716 (App.Div.1988). Defendant concedes that the materials he submitted in the trial court do not generate a sufficient basis for R. 4:50 relief and, if held to that standard, his request for a modification of this obligation must be deemed inadequate. Since we conclude that defendant was required to meet the requirements of R. 4:50, we reject defendant's argument that the judge erred in denying him relief on this aspect of his motion.
Affirmed.
NOTES
[1] The parties allocated the $2,000 child support obligation by indicating that $500 of this monthly amount related to the support of their daughter Andrea, who was then nearly eighteen years of age, and that the other $1,500 was related to the support of their son Stefan, who was then twelve years of age.
[2] Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980).
[3] For example, the PSA states that "[d]uring the divorce proceedings, ASI's sales and profits continued to decline, and ASI's credit line from Fleet Bank was reduced from $1,000,000.00 to $300,000.00. The husband represents, meanwhile, he developed additional business interests, but during the litigation period these had not produced any revenues to him. Between December 2000 and December 2001, ASI's value dropped from $1,500,000 to $1,000,000. The husband has further asserted that this trend continues in 2002, and that he reduced his salary in 2001 to $324,000 per year."
[4] The PSA was executed the same day the judgment was entered.
[5] In Point IV of his brief, defendant is critical of the judge's refusal to consider his late reply papers. Even if the judge should have considered these late papers, an issue we need not resolve, defendant was not prejudiced because the relief he sought was denied due to the judge's conclusion that the timing of the motion demonstrated that the changes alleged were not permanent. Since the reply papers only re-argued the significance of facts previously asserted and presented little new information, we conclude there is no merit to defendant's contention that he was wrongfully deprived of the opportunity to reply to plaintiff's opposition to his motion.
[6] Alimony is taxable to the recipient. See, e.g., Hughes v. Hughes, 311 N.J.Super. 15, 35, 709 A.2d 261 (App.Div.1998).