**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5028-15T3

S.O.,

    Plaintiff-Appellant,

v.

M.O.,

    Defendant-Respondent.

_____

Submitted October 10, 2017 — Decided October 20, 2017

Before Judges Sabatino and Whipple.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Camden County,
Docket No. FM-04-1788-02.

Newman & Ingemi, LLC, attorneys for appellant
(Scott J. Newman, on the briefs).

Obermayer Rebmann Maxwell & Hippel, LLP,
attorneys for respondent (Shari B. Veisblatt
and Amy L. Rokuson, on the briefs).

PER CURIAM

    This appeal concerns efforts by a former husband to reduce
his monthly permanent alimony payment in a situation where his
annual earnings have declined and his ex-wife's annual earnings
have risen since the time of the parties' 2003 divorce. The Family

Part initially granted the ex-husband's seemingly-unopposed request and cut his alimony in half, but then reinstated the full monthly sum after finding that the ex-wife had not been aware of his motion. After a plenary hearing on the merits, the Family Part denied the ex-husband's motion in its entirety, and also ordered him to pay a portion of the ex-wife's counsel fees.

The ex-husband now appeals the Family Part's ultimate rejection of his motion for alimony reduction and the counsel fee award. For the reasons that follow, we vacate those determinations and remand for further proceedings and reconsideration.

I.

Because this case is being remanded, we need not discuss the record comprehensively. The following summary will suffice for our purposes.

Plaintiff S.O. and defendant M.O. entered into a Dual Final Judgment of Divorce ("DFJD") on March 25, 2003.[1] The parties two daughters were then minors. The then-husband was then earning an average of $200,000 annually and the then-wife was earning an average of $30,000. The wife's reasonable monthly budget was agreed at the time of the DFJD to be in the range of $8,000 to

---

[1] Because we quote and discuss income and expense information from the parties' divorce agreement and case information statements, we use initials to maintain confidentiality. See R. 1:38-3(d)(1) (as revised, eff. Sept. 1, 2017).

$8,400.  The husband agreed to pay the wife permanent alimony in the amount of $55,000 annually, as well as child support, and to maintain life insurance to secure his support obligations.

The parties specifically recited in the DFJD that, apart from grounds for modification based on cohabitation, they "acknowledge that an application for modification of this alimony award can also be brought by either party based upon a substantial change of circumstances."

At the time of the divorce, the husband was working as a sales representative and project manager for a company.  He then had a $100,000 annual base salary and was then receiving approximately $100,000 more in bonus income, for a combined total of $200,000.

Thereafter, the company's bonus eligibility formula (which depended in part on the performance of co-workers in the ex-husband's work unit) became more difficult, although the ex-husband's base salary was raised to $160,000.  Meanwhile, the ex-husband remarried and now has two minor dependents from that relationship.

Conversely, the ex-wife's own earnings have risen.  As of 2014, she was earning about $52,000, or about $22,000 above what she had been earning at the time of the 2003 divorce.  In addition, her household expenses have slightly decreased.

3

The ex-husband initially moved to modify and reduce his alimony in 2009. His application was denied by the Family Part for failure to show changed circumstances. That 2009 ruling was not appealed.

The ex-husband continued to earn below his 2003 income level of $200,000. Consequently, in the latter part of 2014, he filed another motion for modification. His attorney served the ex-wife with the motion papers by regular and certified mail in accordance with Rule 1:5-2. Even though the parties had continued to engage in email and text message exchanges concerning the children, the ex-husband and his attorney decided not to provide the ex-wife with additional notice of the motion through her business email, allegedly because of confidentiality and security concerns. Consequently, the ex-husband's modification motion, which was accompanied by a motion to emancipate the two daughters, was not seen or opposed by the ex-wife.

The trial court thereafter issued an order on December 12, 2014 emancipating the children[2] and scheduling a plenary hearing in January 2015 on the alimony modification motion. The ex-wife did not respond, again having only been served with notice of the upcoming plenary hearing by mail.

---

[2] The ex-wife has not challenged the emancipation ruling.

A-5028-15T3

The motion judge treated the modification motion as unopposed. That judge issued an order on January 16, 2015, reducing the ex-husband's alimony obligation by half to $27,500 annually, and also reducing his corresponding life insurance policy obligation by half from $500,000 to $250,000 in coverage.

According to the ex-wife, she first learned of this motion practice when she received a substantially-reduced alimony check from the ex-husband in early 2015. This prompted her to file a motion to vacate the court's orders for lack of adequate service.

The motion judge decided to conduct a plenary hearing on the service issue. He heard testimony at that hearing from both the ex-husband, whom he did not find credible on these service issues, and the ex-wife, whom he conversely did find to be credible. The judge found that the husband had "willfully misled" the court concerning the supposed confidentiality problems with providing the wife notice of his motion through her work email. The judge consequently vacated the prior order of modification from January 2015, and set down the merits of the contested alimony modification issues for a plenary hearing.

The plenary hearing on the alimony issues took place over two days in March and April 2016, during which the judge heard testimony from both parties. This time, the judge found both parties to be "credible and believable." Having considered their

testimony and other proofs, the judge denied modification to the ex-husband in a written decision issued on June 17, 2016. The judge concluded that the ex-husband had not shown a sufficient change in circumstances to warrant such relief.[3]

Thereafter, in a separate order dated July 18, 2016, the trial court awarded $7,961.75 in counsel fees to the ex-wife, a sum representing about half of the fees that she said she had incurred. The judge found that the ex-husband's wrongful conduct had caused the need for the court's initial plenary hearing on service issues. Moreover, the ex-husband's unsuccessful motion to modify alimony had generated additional attorney time, including counsel appearances at the plenary hearing on the merits.

## II.

On appeal, the ex-husband argues that the trial court erred in several respects. First, he contends that the court should have taken into account the substantial increase in the wife's income since the DFJD was entered in 2003. Second, he argues that the judge should not have required him to seek other higher-paying employment once his long-time employer's bonus structure changed.

---

[3] We note that in an earlier portion of the written decision the judge stated, conversely, that the ex-husband's net loss of $35,000 in annual earnings "meets the threshold element for changed circumstances." We suspect that the judge meant that the ex-husband had presented a prima facie case of "changed circumstances," but ultimately not a sufficiently persuasive one.

Third, he argues that the trial court did not sufficiently consider that the ex-wife has less expenses now that the children are emancipated. Fourth, he maintains that the court's counsel fee award is excessive, and that it fails to take into account that, once alimony is factored in, the parties have roughly equivalent income. The ex-wife has not cross-appealed any of the trial court's rulings.

It is well recognized that our courts have "broad equitable powers . . . to review and modify alimony and support orders at any time." Weitzman v. Weitzman, 228 N.J. Super. 346, 353 (App. Div. 1988), certif. denied, 114 N.J. 505 (1989); see also N.J.S.A. 2A:34-23; Reese v. Weis, 430 N.J. Super. 552, 569-70 (App. Div. 2013). In making such assessments, we are guided by the Supreme Court's holdings in its seminal opinion of Lepis v. Lepis, 83 N.J. 139 (1980). We repeat those familiar concepts for context.

First, the moving party under Lepis must make a threshold prima facie showing that "changed circumstances have substantially impaired the ability to support himself or herself." Id. at 157. In considering a proffer of changed circumstances, it is often necessary for the court to delve into the financial status of both parties. Id. at 158.

When a prima facie showing is made under Lepis, the court next must determine if a plenary hearing is warranted. Id. at

7                                              A-5028-15T3

159. To obtain such a hearing, the moving party must "clearly demonstrate the existence of a genuine issue . . . [of] material fact." Ibid. In making this determination, the court should look to the certification and supporting documents of the parties. Ibid.

Once the plenary hearing stage is reached, there is no firm rule governing when an existing support obligation has ceased to be "'equitable and fair'"; rather, courts will assess several factors dependent on the nature of each case. Id. at 153 (quoting Smith v. Smith, 72 N.J. 350, 360 (1977)). These factors include, among other things, whether the change in circumstance is temporary or permanent; whether the change was voluntary; whether it was motivated by bad faith or a desire to avoid payment; and whether the change in circumstance renders the payor former spouse unable to pay. See, e.g., Larbig v. Larbig, 384 N.J. Super. 17, 23 (App. Div. 2006) (finding a reduction in income to be temporary); Kuron v. Hamilton, 331 N.J. Super. 561, 572 (App. Div. 2000) (finding that the good faith of the movant is "but one ingredient" to consider); Deegan v. Deegan, 254 N.J. Super. 350, 355 (App. Div. 1992) (finding that a voluntary change such as retirement may still warrant a modification). Courts cannot fairly undertake

this balancing of equities when they lack sufficient evidence in the record to do so.  Deegan, supra, 254 N.J. Super. at 354.[4]

In reviewing the Family Part's rulings in such matrimonial cases, we generally accord considerable deference to that court's expertise in family matters and its exercise of discretion.  See Cesare v. Cesare, 154 N.J. 394, 411-12 (1998); see also Pascale v. Pascale, 113 N.J. 20, 33 (1988).  However, we will provide appellate relief in instances where the trial court has strayed from legal principles, overlooked material facts or factual issues, or reached its conclusions without adequate support in the record.  See, e.g., Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (recognizing the need for appellate relief when a trial court's decision is made without a rational explanation, has inexplicably departed from established policies, or has rested upon an impermissible basis).

---

[4] In supplemental briefs requested by this court, both parties have now acknowledged that the revised alimony standards adopted by the Legislature in 2014, as now codified in subsection (k) of N.J.S.A. 2A:34-23, do not retroactively apply to the ex-husband's motion to modify the agreed-upon alimony obligation that was set forth in the parties' 2003 DFJD.  See Spangenberg v. Kolakowaski, 442 N.J. Super. 529, 538-39 (App. Div. 2015); see also L. 2014, c. 42, § 2 (instructing that the 2014 amendments do not apply to agreed-upon alimony terms incorporated into a final divorce judgment pre-dating the effective date of the 2014 amendments). Hence, the motion judge appropriately did not apply new subsection (k) to the ex-husband's motion.

Here, we agree that the ex-husband presented sufficient indicia of a material change in circumstances under Lepis to warrant the plenary hearing the trial court conducted. That prima facie material change is supported by the ex-husband's loss of approximately $35,000 in annual earnings, and the ex-wife's increased earnings of approximately $22,000. In addition, the monthly household expenses of both parties have been affected since 2003 by the emancipation of their children and by the ex-husband's remarriage.

That said, there are several aspects of the trial court's analysis in its written decision that warrant reexamination. First, the trial court does not seem to have given explicit consideration to the ex-wife's increase in earnings. Although we agree that her increase is rather modest, it should improve her ability to meet her reasonable household expenses, particularly since the children are now emancipated. In this regard, a closer review of her actual current expenses and expenses appears to be warranted.

Second, we disagree with the trial court's determination that the ex-husband has violated a legal duty to seek more lucrative employment and that, in essence, he is voluntarily underemployed.

As the ex-husband emphasizes, he has worked in a stable job with the same employer for over twenty-five years. He has no

10

control over his employer's change in the bonus formula. The achievement of a bonus is not entirely within the ex-husband's personal control but depends upon his work unit's overall performance and profitability. Presumably his work colleagues would have incentives to achieve the bonuses even if, hypothetically, the ex-husband's incentives were somehow tempered by his duty to pay his ex-wife alimony and his desire to obtain modification. If, as the trial court presumed, another position with a different employer earning $200,000 were available to the ex-husband, taking such a new job would create a risk that it could be less secure and stable than the ex-husband remaining with his long-time employer of over twenty-five years. In sum, the "totality of circumstances" do not bespeak a situation of the ex-husband's voluntary underemployment. Storey v. Storey, 373 N.J. Super. 464, 472-75 (App. Div. 2004).

Third, the record is somewhat murky concerning a fair and appropriate allocation of expenses within the ex-husband's current household. His current wife apparently earns approximately $50,000 to $100,000 annually. She has no legal duty to support her husband's former spouse. On the other hand, the ex-husband's "role in his new family does not obviate his responsibilities to his first family." Guglielmo v. Guglielmo, 253 N.J. Super. 531, 544 (App. Div. 1992). See also Wei v. Wei, 248 N.J. Super. 572,

575 (App. Div. 1991) ("[An alimony obligation] may [not] be excused in whole or in part from those obligations by remarrying and voluntarily assuming additional obligations which may in part conflict with his undertaking in the divorce proceedings").

Here, the trial judge's analysis divided the ex-husband's household expenses equally with his present wife. That may well be a fair and equitable allocation. However, since this matter needs to be remanded in any event, the parties on remand are free to develop the record on this point in more depth and detail what the actual division of expenses is within the household. The judge could then reconsider whether a 50/50 allocation is sufficiently protective of the ex-wife's right to alimony, while, at the same time, not indirectly foisting an unfair financial burden upon the new spouse.

For these many reasons, we vacate the orders at issue and remand this matter to the Family Part for further proceedings. On remand, the trial court shall allow the parties to present updated financial proofs and any other pertinent evidence. Pending the outcome of the remand, the ex-husband's existing alimony obligation shall remain in force.

If, on reconsideration with a fuller record, the trial court decides to reduce the ex-husband's alimony level, the court shall have the discretion to determine an appropriate effective date for

12                                                                    A-5028-15T3

the modification, and to make any adjustments to arrears that may be warranted.[5]  The trial court shall convene a case management conference within thirty days to plan the remand proceedings.

Vacated and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] Because we are remanding the merits of the alimony issues, we need not address the counsel fee questions in depth, which shall abide the outcome of the remand.  For the guidance of the parties and the trial court, we do note that we detect no abuse of discretion in the partial amount of fees the court awarded, although the ex-wife's status as prevailing party could be affected by the outcome of the remand, in which case, the prior counsel fee award must be reconsidered.  See Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (noting that an abuse of discretion review standard applies on appeal to Family Part counsel fee awards).

A-5028-15T3