**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-6046-17T1

SHELLEY FREYDONT,

     Plaintiff-Respondent,

v.

RICHARD M. LENCHNER,

     Defendant-Appellant.

_____

Argued September 23, 2019 – Decided October 2, 2019

Before Judges Fasciale and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1384-04.

William John Heimbuch argued the cause for appellant (Heimbuch & Solimano, PC, attorneys; William John Heimbuch, on the brief).

Jacqueline M. Dugan argued the cause for respondent (November & Nunnink, LLC, attorneys; Jacqueline M. Dugan, on the brief).

PER CURIAM

In this post-divorce matrimonial case, defendant Richard M. Lenchner appeals from a July 19, 2018 order denying his motion to suspend or modify his alimony obligation to plaintiff Shelley Freydont. Judge Avis Bishop-Thompson conducted oral argument, at which she swore in the parties. After argument, the judge denied the motion, entered the order, and rendered an oral opinion. We affirm.

The parties were married for approximately nineteen years and have two children together. The children are now adults and emancipated. In October 2004, and as part of the final divorce judgment, the parties entered into a property settlement agreement (PSA), which required defendant to pay plaintiff $35,000 in alimony annually. The parties negotiated that amount in consideration of defendant's $140,000 salary. The PSA stated defendant "shall only be permitted to seek a reduction in his alimony obligation based upon an involuntary change in his job status."

In 2013, the parties entered into a consent order (CO), which increased defendant's annual alimony obligation by $4,000. The CO's practical effect eliminated yearly reviews of defendant's income, which plaintiff certified had been a struggle. Importantly, the CO did not obviate defendant's obligation under the PSA to demonstrate, as a precondition to a downward modification of

his alimony obligation, an "involuntary change in his job status." Since entering into the CO, defendant filed three motions seeking to suspend his alimony obligation.

Defendant filed his first motion in February 2017, certifying that his then employer terminated his position in August 2016. Plaintiff certified that defendant obtained a new job earning $150,000 while his motion was pending. Plaintiff asserted defendant neglected to disclose his new employment. The judge found that defendant failed to demonstrate changed circumstances and denied the motion. Defendant did not seek reconsideration or interlocutory review of the order denying the first motion.

In October 2017, defendant filed his second motion. Defendant certified that although he accepted a new position – earning $150,000 – his new employer terminated him in June 2017. The judge who heard the second motion questioned whether the termination was involuntary. And, before denying the motion, that judge gave defendant the opportunity to "confirm the nature of the termination[.]" According to that judge, "[d]efendant opted not to address the [c]ourt's concern." He then found that defendant failed to show that the termination was involuntary and denied defendant's motion. Like the first

A-6046-17T1

motion, defendant did not seek reconsideration or interlocutory review of the order.

In May 2018, defendant filed his third motion, which led to the order under review. Defendant provided no further explanation about whether his previous employment termination was involuntary. Plaintiff – who at the time was sixty-eight-years old – opposed the motion by emphasizing the PSA's language. She maintained that the PSA required defendant to show his job status was involuntary. Plaintiff also pointed out that defendant's income in 2015 was $251,165, which was substantially more than the $160,000 threshold income that the parties used when entering into the CO. Assuming defendant could show that the termination was involuntary, plaintiff contended that he did not look for replacement work in good faith.

At oral argument, Judge Bishop-Thompson questioned defendant's counsel about his employment termination. Counsel responded that defendant "had a contentious relationship with the owner." Notwithstanding whether the termination was involuntary, the judge emphasized that defendant had an obligation to find work. The judge also questioned defendant's good faith efforts to find work. After examining defendant's log of his efforts, the judge found that defendant sought employment only when he made a motion to reduce his

alimony obligation.  She concluded that defendant had not established changed circumstances and denied the motion.

On appeal, defendant argues that the judge misapplied the law.  He also asserts that the judge abused her discretion by not finding changed circumstances warranting relief or a full plenary hearing.  As to the misapplication of the law, defendant contends the judge failed to apply N.J.S.A. 2A:34-23(k), specifically (k)(9) – addressing the possibility of a temporary remedy pending continuing employment investigations.

Alimony "may be revised and altered by the court from time to time as circumstances may require."  N.J.S.A. 2A:34-23.  A showing of "changed circumstances" is required to modify an alimony obligation.  Lepis v. Lepis, 83 N.J. 139, 146 (1980).  "Whether an alimony obligation should be modified based upon a claim of changed circumstances rests within a Family Part judge's sound discretion."  Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006).  Each individual motion for modification is fact-sensitive, and "the appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters."  Ibid. (quoting Martindell v. Martindell, 21 N.J. 341, 355 (1956)).  We will not disturb the trial court's decision on alimony unless we

A-6046-17T1

conclude that the trial court clearly abused its discretion, failed to consider all of the controlling legal principles, or must otherwise be well satisfied that the findings were mistaken or that the determination could not reasonably have been reached on sufficient credible evidence present in the record after considering the proofs as a whole.

[Heinl v. Heinl, 287 N.J. Super. 337, 345 (App. Div. 1996).]

Although N.J.S.A. 2A:34-23(k) became effective on September 10, 2014, its application to provisions of pre-existing orders and agreements – like the PSA – is guided by the bill adopting the alimony amendments. The bill adds a provision that declares the new law non-retroactive with respect to certain prior judicial orders and alimony agreements. See Spangenberg v. Kolakowski, 442 N.J. Super. 529, 538 (App. Div. 2015). The bill states:

This act shall take effect immediately and shall not be construed either to modify the duration of alimony ordered or agreed upon or other specifically bargained for contractual provisions that have been incorporated into:

a. a final judgment of divorce or dissolution;

b. a final order that has concluded post-judgment litigation; or

c. any enforceable written agreement between the parties.

[L. 2014, c. 42, § 2.]

"This additional statement signals the legislative recognition of the need to uphold prior agreements executed or final orders filed before adoption of the statutory amendments." Spangenberg, 442 N.J. Super. at 538. That is exactly what the judge did here.

The parties incorporated the PSA language – which contains bargained for contractual provisions – into the final judgment of divorce. The parties agreed that defendant could only seek alimony modification if he could make a prima facie showing of an "involuntary change in his job status."

Two judges concluded that defendant failed to make a prima facie showing. The first judge explicitly gave defendant time to "confirm the nature of the termination[,]" but "[d]efendant opted not to address the [c]ourt's concern." Judge Bishop-Thompson specifically remarked that the voluntariness issue remained unresolved, even though the earlier judge found that "[d]efendant's [r]eply [c]ertification was unclear whether [d]efendant's [employment] termination . . . was voluntary or involuntary."

Our Supreme Court recognized that "[p]arties to a divorce action may enter into voluntary agreements governing the . . . terms . . . of alimony[.]" Quinn v. Quinn, 225 N.J. 34, 48 (2016). "Agreements between separated spouses executed voluntarily and understandingly for the purpose of settling the

issue of [alimony and child support] are specifically enforceable, but only to the extent that they are just and equitable." Ibid. (citation omitted) (alteration in original). Here, defendant has not argued that the PSA is unjust or inequitable. Rather, he contends that his termination was involuntary, and that he has shown changed circumstances.

We have no reason to disturb the findings that defendant failed to address whether his termination was involuntary. Thus, he was unable to meet the condition imposed by the PSA. Nevertheless, the judge found that defendant did not demonstrate changed circumstances. And the judge questioned whether defendant acted in good faith to find replacement work. We decline to disturb this finding, and conclude that the judge did not abuse her discretion by not conducting a full plenary hearing. If warranted, defendant is always free to make another motion to modify his alimony obligation.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION