**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0408-20

JUSTIN MANLEY,

    Plaintiff-Appellant,

v.

SUZANNE MANLEY,

    Defendant-Respondent.

_____

Submitted January 5, 2022 – Decided January 14, 2022

Before Judges Rothstadt and Mayer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, No. FM-12-0999-17.

Arndt & Sutak, LLC, attorneys for appellant (Lauren A. Miceli, on the briefs).

Rozin Golinder Law, LLC, attorneys for respondent (Alyssa A. Bartholomew, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff Justin Manley appeals from a September 18, 2020 order granting a reconsideration motion filed by defendant Suzanne Manley. The judge reconsidered an April 3, 2020 order granting plaintiff's motion for discovery to determine whether plaintiff was entitled to modify or terminate alimony based on defendant's claimed cohabitation. On reconsideration, the judge concluded plaintiff failed to establish a prima facie showing of cohabitation and vacated the April 3, 2020 order allowing discovery. We affirm.

Plaintiff and defendant divorced in 2016. As part of their final judgment of divorce, the parties executed a Marital Settlement Agreement (MSA), obligating plaintiff's payment of alimony to defendant. The MSA provided plaintiff's alimony obligation

> shall irrevocably terminate upon . . . [defendant]'s cohabitation with someone in the manner of Husband and Wife for a three (3) month period, regardless of the amount of financial contribution by the other party. [Defendant] has an express duty to inform [plaintiff] when she is cohabitating; if she fails to do so, all alimony paid during the period of cohabitation shall be refunded retroactively . . . .

Because plaintiff believed defendant was cohabitating, he hired a private investigator. In 2020, based on the investigator's findings, plaintiff filed a

A-0408-20

motion to terminate alimony, alleging defendant was cohabitating with Sam.[1] Plaintiff included a written report and photographs from the investigator in support of his motion.[2] The report stated, "evidence was obtained . . . support[ing] the allegations that [Sam] and [defendant] are involved in an intimate, mutually beneficial, family relationship."

Defendant opposed plaintiff's motion. In her certification, she admitted dating Sam but denied the two were cohabitating. According to defendant, she did "not live under the same roof" as Sam and they "maintained completely different households." She further certified they did not "intertwine[] [their] finances." While defendant acknowledged Sam moved to the same town where she maintains her home, defendant claimed he did so for reasons related to his own family situation.

In an April 3, 2020 order, the motion judge granted plaintiff's motion in part. The judge declined to alter plaintiff's alimony obligation but ordered the parties to exchange discovery. The order provided, "[u]pon completion of such discovery period, [p]laintiff may submit appropriate papers and proofs

---

[1] We refer to the claimed cohabitant by a pseudonym to protect his privacy.

[2] No certification or affidavit from the investigator accompanied the report.

A-0408-20

addressing whether a change in circumstances has occurred to warrant a modification and/or termination of [p]laintiff's alimony obligation."

Defendant moved for reconsideration, seeking to preclude discovery because plaintiff failed to establish a prima facie case of cohabitation. Plaintiff submitted opposition.

In seeking to establish defendant and Sam were cohabitating, plaintiff provided evidence of defendant's use of Sam's wholesale club card and country club membership card. Plaintiff also submitted photographs of defendant bringing groceries to Sam's home. Additionally, plaintiff provided Facebook postings showing defendant and their children travelling with Sam and his daughter, as well as photographs of Sam attending sporting events for plaintiff's children. Plaintiff also certified that defendant brought Sam to family reunions and other family events.

Defendant admitted to using Sam's wholesale club card but explained she reimbursed Sam for the expenses attributable to her use of the card. She also responded to her use of Sam's country club privileges, indicating she attended club activities solely as Sam's guest. While defendant and Sam assisted each other in carrying groceries, defendant certified each paid for their own groceries. Regarding attendance at the children's sporting events, defendant explained Sam

4

attended ten hockey games over three years. Concerning traveling with Sam, defendant claimed they travelled "like a couple in a dating relationship" with each person paying his and her own travel expenses.

Defendant's family and friends recognize her relationship with Sam as a dating relationship and the pair's social media presence depicted a typical adult dating relationship. Defendant acknowledged being in a romantic relationship with Sam since 2016. According to defendant, while Sam spent some nights at her house, he never stayed overnight during defendant's parenting time with her children. Defendant further explained she and Sam do not have keys to the other's home

After reviewing the parties' submissions, the judge found plaintiff established only two out of the seven factors under the cohabitation statute, N.J.S.A. 2A:34-23(n). The judge concluded there was no evidence "of intertwined finances, joint living expenses, sharing of household chores, or an enforceable promise of support." However, the judge found plaintiff presented "a showing of recognition of the relationship [between defendant and Sam] as well as frequent contact." Although the investigator's report lacked the required attestation, the judge considered the information and photographs contained in that report in deciding the motions.

A-0408-20

In a September 18, 2020 order, the judge granted defendant's reconsideration motion. He concluded plaintiff failed to establish a prima facie case of cohabitation. Thus, the judge determined plaintiff was not entitled to discovery and vacated his April 23, 2020 order.

On appeal, plaintiff argues the judge erred in finding he failed to present evidence establishing a prima facie case of cohabitation and disallowing discovery to address his request to terminate alimony under the MSA. We disagree.

Our review of a trial court's decision to modify or terminate alimony is limited. "[E]very motion to modify an alimony obligation 'rests upon its own particular footing and the appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters.'" Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006) (quoting Martindell v. Martindell, 21 N.J. 341, 355 (1956)).

Our examination of a trial judge's decision on a motion to terminate "alimony is limited to whether the court made findings inconsistent with the evidence or unsupported by the record, or erred as a matter of law." Reese v. Weis, 430 N.J. Super. 552, 572 (App. Div. 2013). A motion to terminate alimony is based on facts specific to each case, and we "must give due

recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters." Larbig, 384 N.J. Super. at 21 (quoting Martindell, 21 N.J. at 355).

Alimony "may be revised and altered by the court from time to time as circumstances may require." N.J.S.A. 2A:34-23. A motion addressed to termination or suspension of alimony requires a showing of "changed circumstances." Lepis v. Lepis, 83 N.J. 139, 146 (1980). A prima facie showing of cohabitation constitutes sufficient changed circumstances under Lepis. See Gayet v. Gayet, 92 N.J. 149, 154-55 (1983). "[A]limony may be terminated or modified pursuant to a consensual agreement . . . ." Temple v. Temple, 468 N.J. Super. 364, 368 (App. Div. 2021) (citing Konzelman v. Konzelman, 158 N.J. 185, 193-94 (1999)).

Cohabitation has been defined as "an intimate relationship in which the couple has undertaken duties and privileges that are commonly associated with marriage." Konzelman, 158 N.J. at 202. "A mere romantic, casual or social relationship is not sufficient to justify the enforcement of a settlement agreement provision terminating alimony. Such an agreement must be predicated on a relationship of cohabitation that can be shown to have stability, permanency and mutual interdependence." Ibid. Cohabitation "is based on those factors that

A-0408-20

make the relationship close and enduring and requires more than a common residence." Ibid.

In 2014, the Legislature amended the cohabitation statute to provide:

> [a]limony may be suspended or terminated if the payee cohabits with another person. Cohabitation involves a mutually supportive, intimate personal relationship in which a couple has undertaken duties and privileges that are commonly associated with marriage or civil union but does not necessarily maintain a single common household.
>
> When assessing whether cohabitation is occurring, the court shall consider the following:
>
> (1) Intertwined finances such as joint bank accounts and other joint holdings or liabilities;
>
> (2) Sharing or joint responsibility for living expenses;
>
> (3) Recognition of the relationship in the couple's social and family circle;
>
> (4) Living together, the frequency of contact, the duration of the relationship, and other indicia of a mutually supportive intimate personal relationship;
>
> (5) Sharing household chores;
>
> (6) Whether the recipient of alimony has received an enforceable promise of support from another person within the meaning of subsection h. of [N.J.S.A.] 25:1-5; and
>
> (7) All other relevant evidence.

A-0408-20

> In evaluating whether cohabitation is occurring and whether alimony should be suspended or terminated, the court shall also consider the length of the relationship. A court may not find an absence of cohabitation solely on grounds that the couple does not live together on a full-time basis.
>
> [N.J.S.A. 2A:34-23(n).]

Recently, this court held a party seeking to terminate alimony based on cohabitation need not "check off all six boxes [under N.J.S.A. 2A:34-23(n)] to meet the burden of presenting a prima facie case, [otherwise] a finding of cohabitation [would] be as rare as a unicorn." Temple, 468 N.J. Super. at 370. In Temple, the plaintiff, as the supporting spouse, submitted ample evidence of cohabitation to warrant an order allowing discovery and scheduling a plenary hearing. The plaintiff in that case presented the following evidence of cohabitation: the defendant and the claimed cohabitant lived together and had a fourteen-year relationship; the claimed cohabitant referred to the defendant as his wife on social media posts over a period of many years as well as in a Mother's Day church publication which listed the defendant under the claimed cohabitant's last name; the defendant and the claimed cohabitant traveled and participated in events extensively from 2012 through 2019; over the fourteen year relationship, the two were together for holidays and family functions; the defendant resided in the claimed cohabitant's home at the shore and the claimed

cohabitant resided at the defendant's apartment in New York City; photographs of the defendant engaging in household responsibilities and using a key and access code to enter and exit the claimed cohabitant's home; and the defendant and the claimed cohabitant sanitized their social media accounts to delete evidence of their cohabitation after the plaintiff's attorney requested preservation of records upon the filing of a motion to terminate alimony based on cohabitation. Id. at 371-375. When presented with such a wealth of evidence, we held the plaintiff presented a prima facie case of cohabitation "to entitle him to discovery and an evidentiary hearing." Id. at 375.

However, the evidence in the matter on appeal is very different from the evidence presented in Temple. Here, plaintiff failed to present "an abundance of evidence" that defendant and Sam were cohabitating. Id. at 371. The judge determined plaintiff presented some evidence, but certainly less than strong evidence, in support of two of the seven statutory factors governing cohabitation.

At best, the judge concluded the evidence marshalled by plaintiff demonstrated an adult dating relationship over the course of three years. Unlike the social media posts in Temple, plaintiff submitted posts showing defendant and Sam attended two family functions and holidays, took two trips over a three-

A-0408-20

year period, and attended a child's sporting event in two photos. Nor did plaintiff present evidence defendant and Sam spent considerable time in each other's home or had keys as was proffered to the trial court in <u>Temple</u>. Moreover, unlike the defendant and the claimed cohabitant in <u>Temple</u>, defendant and Sam maintained separate homes and households and plaintiff proffered no evidence to the contrary.

The motion judge considered the certifications submitted by plaintiff and defendant but did not resolve any factual disputes contained in the competing certifications. Rather, the judge considered the proffered evidence and concluded it was insufficient under N.J.S.A. 2A:34-24(n) to establish a prima facie case of cohabitation. The judge determined plaintiff simply presented evidence of a dating relationship that was not akin to the marital-type relationship presented to the trial court in <u>Temple</u>. Having reviewed the record, we are satisfied the judge did not abuse his discretion when he determined plaintiff failed to demonstrate a prima facie case in support of cohabitation to warrant discovery.

We next consider plaintiff's argument the MSA eliminated the judge's need to examine financial contributions between defendant and Sam. "An agreement that resolves a matrimonial dispute is no less a contract than an

11

agreement to resolve a business dispute." Quinn v. Quinn, 225 N.J. 34 45 (2016). "It is not the function of the court to rewrite or revise an agreement when the intent of the parties is clear." Ibid. "[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Ibid.

Here, we need not address waiver of financial contribution as a factor in the cohabitation analysis based on the limited evidence proffered by plaintiff. The lack of evidence supporting the other statutory factors weighed against a finding of cohabitation. The judge properly considered the cohabitation factors and determined plaintiff's evidence was insufficient to warrant discovery even if there had been evidence of financial contribution between defendant and Sam.

Based on the paucity of evidence to establish cohabitation under N.J.S.A. 2A:34-24(n), we discern no basis to disturb the judge's September 18, 2020 order vacating his April 23, 2020 order compelling discovery on the issue of cohabitation.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0408-20