**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2184-18T2

HARISH SHETTY,

      Plaintiff-Appellant,

v.

SEEMA SHETTY,

      Defendant-Respondent.

_____

Submitted November 18, 2019 – Decided January 3, 2020

Before Judges Messano and Vernoia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-0883-16.

Townsend Tomaio & Newmark LLC, attorneys for appellant (Gregory A. Pasler, on the briefs).

Frank E. Tournour, attorney for respondent.

PER CURIAM

      Plaintiff Harish Shetty appeals from a Family Part order denying his motion to modify his alimony obligation based on an alleged change in

circumstances related to changes in his income and the income of his former spouse, defendant Seema Shetty. Based on our review of the record in light of the applicable law, we vacate the court's order and remand for further proceedings.

I.

Following twenty-two years of marriage and the births of their two children, plaintiff and defendant divorced in October 2016. Their final judgment of divorce incorporated a matrimonial settlement agreement (MSA) in which plaintiff agreed to pay defendant $52,000 annually in limited duration alimony for fifteen years.[1] Plaintiff also agreed to pay $258 per week in child support. The MSA expressly provides that the child support obligation is "based on [defendant's] income of approximately $20,000 per year."

Seven months after entry of the final judgment, plaintiff moved to reduce his child support and alimony obligations. The court denied the request for modification of alimony, finding plaintiff failed to demonstrate defendant's post-judgment employment constituted a condition permitting a modification of the MSA's alimony provision. The court found the MSA "lays out the conditions

---

[1] The original judgment of divorce was entered on October 13, 2016. An amended judgment of divorce, with revisions not relevant on appeal, was entered on October 27, 2016.

A-2184-18T2

for modifying" alimony that "does not include an increase in income." The court concluded the parties had not reached an agreement on alimony that "would be subject to change upon [d]efendant obtaining employment."

The court, however, ordered the recalculation of child support because the parties agreed that the child support obligation in the MSA was based in part on an imputed annual income of $20,000 to defendant. The court concluded that following entry of the judgment, defendant obtained employment earning $20 per hour and, as a result, child support should be recalculated based on the parties' then current incomes.

Eight months later, in August 2018, plaintiff moved again for modification of his alimony obligation. The motion was founded on plaintiff's claims he had become involuntarily unemployed, he no longer earned the $175,000 annual income upon which his alimony obligation was based, and he could not afford to maintain the alimony obligation under the MSA. The court denied the request without prejudice, finding that following the filing of his modification motion, plaintiff obtained new employment at $155,000 per annum, and that he had received more than $25,000 in severance from his prior employer and collected unemployment compensation benefits prior to obtaining his new position. The court's order stated that plaintiff certified defendant had obtained employment

3

earning "twice the income provided" in the MSA and ordered that defendant provide an updated case information statement to plaintiff within fourteen days.

In November 2018, plaintiff filed his third motion for modification of his alimony obligation. Plaintiff claimed there were changed circumstances warranting the modification: his current income of $155,000 and plaintiff's current income of $42,600.[2] Plaintiff asserted that his alimony obligation under the MSA was based on his $175,000 annual income, but his income had been reduced to $155,000 following his post-judgment involuntary termination from his prior employment and subsequent reemployment by a new employer. He further averred that his alimony obligation is based on an imputed income of $20,000 for defendant, but that her income had more than doubled to $42,600 following entry of the final judgment of divorce. Plaintiff also claimed defendant had $825,000 in assets and no liabilities.

Defendant cross-moved for a denial of plaintiff's motion. Defendant argued that although the parties' agreement on child support was based on an imputed income of $20,000 for her, the alimony obligation was based on an analysis of statutory factors. Defendant further claimed the change in the

___

[2] Defendant's 2018 earned income was calculated based on her October 18, 2018 case information statement.

A-2184-18T2

parties' respective incomes did not warrant the requested modification, and plaintiff's eligibility for bonuses in his new position made it possible for him to earn more than he earned when the parties entered into the MSA. Defendant also argued that if plaintiff sought to preserve the option to move for modification of alimony based on any increase in her income, he should have negotiated for such a provision in the MSA.

In his reply, plaintiff disputed that his alimony obligation was based on the statutory factors and claimed the amount was instead calculated by taking one-third of the difference between defendant's imputed $20,000 income and plaintiff's then $175,000 annual income. Plaintiff also contested defendant's claim that the increase in her income was "slight," asserting that she currently earned "significantly more" than the $20,000 imputed to her when the parties divorced.

Following a December 7, 2019 motion hearing, the court issued a written opinion denying plaintiff's modification motion. The court concluded plaintiff failed to demonstrate a change in circumstances—based on changes in the parties' incomes—sufficient to warrant modification of his alimony obligation. The court found that, at the time of the divorce, plaintiff's income "from all sources" was $175,000, and that, following a short period of unemployment,

plaintiff obtained new employment with a base gross annual income of $155,000. The court further found plaintiff is eligible for bonuses of between $15,500 and $31,000, such that he has the potential to earn between $170,500 and $186,000 with his new employer. Thus, the court determined plaintiff has "the opportunity to perhaps receive even a greater salary than that he attributed to himself at the time of divorce." The court also noted that plaintiff's new employer offered him participation in a long-term wealth building plan or 401(k) savings plan "with a three percent employer match," and an employee stock option plan.

The court further found plaintiff did not dispute that he was aware at the time of the divorce that defendant earned $16 per hour, or $35,630 per annum, when the judgment of divorce was entered. The court found the alimony obligation is not based on the $20,000 annual income plaintiff attributed to defendant at the time of the divorce. Although the parties were divorced in 2016, the court relied on a W-2 wage statement showing defendant's 2017 income of $35,630 to support its conclusion that defendant's income, which in 2018 was $42,016, increased by approximately only $6,300, from the 2016 final judgment of divorce to the filing of plaintiff's third motion to modify his alimony obligation.

A-2184-18T2

The court considered the statutory factors pertinent to a modification of alimony, see N.J.S.A. 2A:34-23(k), and determined plaintiff failed to satisfy his burden of establishing a change in circumstances—based on changes in the parties' respective incomes—sufficient to warrant either a plenary hearing or a modification of his alimony obligation. The court further concluded an evidentiary hearing was unnecessary because neither party requested such a hearing and "it is unlikely" to "result in an alternative finding."

The court entered an order denying plaintiff's motion to modify his alimony obligation based on a change in circumstances and his request to recalculate his alimony obligation based on his and defendant's then current salaries.[3] This appeal followed.

## II.

Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We accord deference to the Family Part due to its "special jurisdiction and expertise" in family law matters. Id. at 413. The court's findings are binding so long as its determinations are "supported by adequate, substantial, credible evidence." Id. at 411-12. We will not disturb the factual

---

[3] The court's order addressed other issues, including requests for modification of child support and for the emancipation of the parties' oldest child, which are not the subject of the pending appeal.

findings and legal conclusions unless convinced they are "so manifestly unsupported by or inconsistent" with the evidence presented. Id. at 412.

"Alimony is an 'economic right that arises out of the marital relationship and provides the dependent spouse with "a level of support and standard of living generally commensurate with the quality of economic life that existed during the marriage."'" Quinn v. Quinn, 225 N.J. 34, 48 (2016) (quoting Mani v. Mani, 183 N.J. 70, 80 (2005)). Parties to a divorce "may enter into voluntary agreements governing the amount, terms, and duration of alimony" that "are subject to judicial supervison and enforcement." Ibid. Changed circumstances permitting a modification of alimony include "an increase or decrease in the income of the supporting or supported spouse," id. at 49 (quoting J.B. v. W.B., 215 N.J. 305, 327 (2013)), or the subsequent employment of the dependent spouse, Lepis v. Lepis, 83 N.J. 139, 151 (1980).

The decision to modify an alimony obligation "based upon a claim of changed circumstances rests within a Family Part judge's sound discretion," Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006), and an alimony determination will not be overturned on appeal absent an abuse of discretion, see Rolnick v. Rolnick, 262 N.J. Super. 343, 360 (App. Div. 1993) (holding that vacating a court's findings as to modification of alimony requires a

A-2184-18T2

determination "that the trial court clearly abused its discretion"). "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not[, however,] entitled to any special deference." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Plaintiff contends the court erred by finding that he failed to establish a sufficient change in the parties' respective incomes to support modification of his alimony obligation. He argues the court erred by mistakenly determining that defendant was employed and earning $16 per hour, or $35,630 per year, when the parties entered into the MSA. Plaintiff has maintained throughout the post-judgment modification motions that defendant was unemployed when the MSA was executed, and the parties imputed a $20,000 annual income to her as a result. According to plaintiff, the court's mistaken finding that the parties agreed defendant was earning $16 per hour when the MSA was executed resulted in the corresponding error that defendant's post-judgment income increased by only $6,300 prior to the filing of plaintiff's modification motion. Plaintiff asserts

that the court should have determined defendant's income increased from the $20,000 used to calculate the alimony obligation in the MSA to more than double that amount for the income she earned in 2018, and that the difference represents a sufficient change in circumstances warranting a modification of alimony.

Consideration of a motion to modify alimony requires application of the standard established by our Supreme Court in Lepis. To determine whether there is a prima facie showing of changed circumstances, a judge must consider the terms of the order at issue and compare the facts as they were when that order was entered with the facts as they are at the time of the motion. See, e.g., Faucett v. Vasquez, 411 N.J. Super. 108, 128-29 (App. Div. 2009).

"There is . . . no brightline rule by which" a court measures a change in circumstances. Larbig, 384 N.J. Super. at 23. "Each and every motion to modify an alimony obligation 'rests upon its own particular footing and [we] must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters.'" Donnelly v. Donnelly, 405 N.J. Super. 117, 127 (App. Div. 2009) (quoting Larbig, 384 N.J. Super. at 21). If a prima facie showing is made, the court must then determine if a plenary hearing is warranted. Lepis, 83 N.J. at 159; see also Crews v. Crews, 164 N.J. 11, 28

(2000) (noting the party seeking modification must make a prima facie showing of changed circumstances before being entitled to a hearing).

Here, the record does not permit a determination of whether the court erred in determining defendant was employed and earning $16 per hour at the time of the divorce because there is a factual dispute as to how the parties calculated the alimony obligation in the first instance. The MSA provides that the child support obligation "is based on [defendant's] income of approximately $20,000 per year." However, the alimony obligation clause lacks any similar reference to defendant's income and does not explain how the alimony obligation was calculated.

In the certifications submitted in connection with plaintiff's first modification motion, the parties presented conflicting statements about defendant's income. In plaintiff's certification, he stated

> [a]s set forth in [d]efendant's Trial Brief, she was employed, making $16[] per hour, at her job . . . However a few weeks before we settled the case, my attorney received a letter saying that [d]efendant was terminated from her position . . . As a result instead of utilizing approximately $33,280 ($16[] per hour multiplied by a forty (40) hour week), we had to settle on imputing her an income of $20,000. This figure was what my alimony obligation was based upon. . . .

However, in her opposition certification, defendant disputed plaintiff's assertion, stating

> I had a job making $16[] an hour at the time of our divorce. That income was imputed to calculate child support, not alimony. I have subsequently obtained alternate employment at $20[] an hour.
>
> . . . .
>
> Income was imputed at $20,000[] per year <u>for purposes of child support</u>.
>
> [(emphasis in original).]

In the court's order denying plaintiff's first modification motion, it noted that "[t]he parties acknowledge that an annual income of $20,000 was imputed to defendant at the time of the parties' divorce and that since then, defendant has obtained employment earning approximately $20[] per hour." However, although the court referred to defendant's income in its discussion of plaintiff's request to modify his child support obligation, it did not make any findings concerning defendant's income in its denial of plaintiff's request to modify his alimony obligation.

Similarly, in the certifications submitted in connection with the modification motion that is the subject of this appeal, the parties again presented conflicting statements about defendant's income at the time the MSA was

executed and the methodology used to calculate plaintiff's alimony obligation. Plaintiff certified that "alimony was based upon [his] income of $175,000 and [d]efendant's imputed income of $20,000," and that the parties "divided the difference between these two . . . incomes by three . . . , which yields" the $52,000 per annum alimony obligation.

In her certification, defendant states "[a]t the time of the divorce, I was unemployed for about two months and that is why in large part $20,000 was the number used for child support. My hourly rate at the time of the divorce was about $16[] per hour but I was only working 20 hours a week." In these two sentences, defendant incongruously suggests she was both employed and unemployed at the time of divorce. Elsewhere, she states more affirmatively that "[a]limony was not based upon [plaintiff's] income of $175,000 and an imputed income of $20,000 to me. Child support was based on those numbers."

Finally, in his reply certification, plaintiff accused defendant of "blatantly falsi[fying]" the basis of the alimony award to "mislead the [c]ourt." Plaintiff stated that defendant "knows that we arrived at an alimony award of $52,000 by taking a third of the difference between her imputed income $20,000 and my income of $175,000," and that "[t]o claim that the alimony award was based upon statutory factors is an absolute lie."

13

During the December 7, 2019 motion hearing, the court focused on the uncertain record as to the manner in which alimony was calculated, asking the parties whether the alimony payment was truly alimony or more akin to a "mathematical buyout." Plaintiff asserted the payment was mathematically constructed based on their incomes, including defendant's imputed income of $20,000. Defendant disputed plaintiff's contention, stating the alimony award had been crafted based on statutory factors, rather than solely based on income.

In its written opinion, the court found plaintiff failed to make a prima facie showing of a substantial change in circumstances, concluding that "[p]laintiff does not dispute his awareness of [d]efendant's $16[] per hour salary at the time of divorce" and "[d]efendant's 2017 W-2 Wage Statement shows a gross salary for 2017 of $35,630[] . . . not the $20,000[] figure [p]laintiff attributes to her at the time of divorce."

The court's findings, however, are not supported by the record. As noted, plaintiff disputes defendant's claim she earned a $16 per hour salary at the time of divorce, asserts defendant was unemployed during the relevant period, and represents that his alimony obligation was based in part on an imputation of only $20,000 per year income to plaintiff. In addition, the parties divorced in 2016 and the MSA was entered into in October 2016. Thus, contrary to the court's

finding, defendant's W-2 statement for her 2017 income could not establish her actual income, if any, in 2016 when the MSA was executed and the parties divorced. Plaintiff argues on appeal the court "mistakenly utilized" the 2017 income information, and, as a result, the court "was under the impression that [d]efendant's income had increased by only $6,300 . . . from that date . . . until the present, though it had increased by over $20,000[]." We agree. Defendant's W-2 statement did not provide the appropriate benchmark against which a determination of changed circumstances could be properly measured.

The record does not support the court's factual findings, and, for that reason, we are constrained to vacate those portions of the court's order denying plaintiff's request for a modification of his alimony obligation and remand for further proceedings. See Gonzalez-Posse, 410 N.J. Super. at 354 (finding we should vacate a trial court's findings if "the determination could not reasonably have been reached on sufficient credible evidence present in the record"). Moreover, the record presents conflicting evidence concerning the income for defendant that was used to calculate the alimony obligation, the methodology used to make the calculation, and the parties' agreement, if any, concerning the amount of defendant's income and the methodology used to determine alimony. The unresolved fact issues do not allow us to determine if there are changed

15

circumstances sufficient to warrant a modification of plaintiff's alimony obligation.

On remand, the court shall consider such additional evidence as may be required and conduct such hearings it deems appropriate to resolve the issues and make the necessary findings of fact and conclusions of law concerning the income for defendant and methodology used to determine plaintiff's alimony obligation set forth in the MSA and judgment of divorce. Based on those findings, the court shall also determine whether plaintiff demonstrated changed circumstances warranting either a modification of his alimony obligation or a plenary hearing on the issue. We do not find the court abused its discretion by determining that the change in plaintiff's income by itself is insufficient to establish changed circumstances warranting either a modification of his alimony obligation or requiring a plenary hearing.

Vacated and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION