**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3334-19

SIMON COULL,

    Plaintiff-Appellant,

v.

NANCY AMSTER-COULL,

    Defendant-Respondent.

_____

> Argued July 27, 2021 – Decided September 1, 2021
>
> Before Judges Rothstadt and Enright.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-1682-10.
>
> Simon Coull, appellant, argued the cause pro se.
>
> Marlyn E. Quinn argued the cause for respondent.

PER CURIAM

    In this post-judgment matrimonial matter, plaintiff Simon Coull appeals from the March 9, 2020 order denying his request for a plenary hearing, as well

as a reduction in his support and life insurance obligations, and awarding defendant Nancy Amster-Coull counsel fees. We affirm, substantially for the reasons set forth in Judge Thomas K. Isenhour's cogent and thoughtful opinion. We add the following comments.

The parties were married in 1990 and have two adult children, ages twenty-five and twenty-three. The parties entered into a comprehensive marital settlement agreement (MSA) in 2011, which was incorporated into their 2012 judgment of divorce (JOD). Under the MSA, plaintiff was ordered to pay limited duration alimony of $5000 per month and child support of $2000 per month. His support obligations were based on imputed income to him of $240,000 per year and actual income to defendant of $60,000 per year.

After unsuccessfully moving to vacate the JOD in 2013, plaintiff sought to modify his support obligations the following year. Because the trial court determined plaintiff established a prima facie case of changed circumstances in 2014, it directed the parties to exchange discovery and participate in mediation.

On December 22, 2015, the parties entered into a consent order whereby, effective October 1, 2015, plaintiff's alimony obligation was reduced to $4000 per month, his child support obligation was reduced to $1577 per month, and he agreed to make a monthly payment of $100 toward the cost of a life insurance

A-3334-19

policy maintained by defendant for the benefit of her and the children. The parties also agreed plaintiff's child support obligation would be reduced to $1000 per month on September 1, 2016, when both children would be attending college, and would automatically drop to $750 per month once the oldest child was emancipated.[1] The consent order provided, in part, that plaintiff's modified support obligations were calculated based on him having an income of $193,000 per year and defendant earning $62,972 per year. However, the consent order also stated "[t]he parties have been unable to agree to [p]laintiff's [level of] income but were willing to agree to the support amounts contained herein." Additionally, it reflected that all provisions in the MSA which were "not inconsistent with the . . . provisions" of the consent order "shall remain in full force and effect."

In October 2019, plaintiff again moved to modify his support obligations, claiming he had experienced a significant decline in income as a cinematographer. In support of his application, plaintiff provided an updated case information statement (CIS) and a letter from his forensic accountant, who

---

[1] Plaintiff certified in October 2019 that, consistent with the terms of the consent order, his child support obligation had reduced to $750 per month because the parties' oldest child was emancipated and the youngest child was in her final year of college. The youngest child was due to graduate in May 2020.

A-3334-19

concluded plaintiff's average pre-tax cash flow for 2017 and 2018 was approximately $90,000. The accountant observed this two-year average was "approximately $150,000 lower than the imputed income of $240,000 ascribed to [plaintiff]" in the 2011 MSA.

Defendant opposed plaintiff's modification motion, arguing he had not demonstrated a change of circumstances since 2015 and had "not provided the documentation required to be filed in connection with a motion for modification of support by a self-employed individual." She also filed a cross motion to enforce plaintiff's support obligations and requested an award of counsel fees.

At oral argument on December 6, 2019, Judge Isenhour acknowledged the analysis he was required to undertake, remarking he would need "to make a determination of whether there's been a substantial change of circumstances since 2015 to now." The judge quoted directly from the alimony statute, and specifically, N.J.S.A. 2A:34-23(l)[2] to explain that because plaintiff was self-

---

[2] This statute provides:

> When a self-employed party seeks modification of alimony because of an involuntary reduction in income since the date of the order from which modification is sought, then that party's application for relief <u>must include an analysis that sets forth the economic and non-economic benefits the party receives from the</u>

A-3334-19

employed, his modification application had to "include an analysis that sets forth the economic and non-economic benefits [he] receives from the business, and which compares these economic and non-economic benefits to those that were in existence at the time of the entry of the order." The judge added he was "concern[ed] . . . whether [plaintiff] complied with the statute in terms of his submission." At the conclusion of the December 2019 hearing, rather than denying plaintiff's application outright, the judge reserved his decision and entered an order allowing plaintiff until the end of the month to "submit a supplemental certification detailing the current economic and non-economic benefits he receives from his business and comparing them to the economic and non-economic benefits he received at the time of the December 22, 2015 consent order." At plaintiff's request, the deadline to submit his supplemental certification was extended until January 24, 2020.

On March 9, 2020, following receipt of plaintiff's supplemental certification and defendant's response to same, the judge issued a comprehensive twenty-page opinion, denying plaintiff's modification motion, as well as his request for a hearing. The judge also awarded defendant $2100 in counsel fees,

_____

business, and which compares these economic and non-economic benefits to those that were in existence at the time of the entry of the order. (Emphasis supplied).

5

concluding plaintiff "did not act reasonably when he did not comply with the court order of December 6, 2019." The judge noted he granted plaintiff an extension to submit his supplemental certification, yet his accountant's "report only summarized what was previously provided to the court, and further details were not included as needed." The judge specified plaintiff's updated information

> only cover[ed] plaintiff's 2009 through 2013 cash flow and 2017 through 2018 cash flow. This report was previously already provided to the court with plaintiff's original motion. The analysis for years 2009 through 2013 is not relevant to this court. The 2017 analysis does not list noneconomic benefits because plaintiff's accountant made adjustments and reported it as taxable income, and the total cash flow reported for 2017 was $90,388. The 2018 analysis lists $4,807 as plaintiff's total non-economic income. Plaintiff's economic income in 2018 was $85,669. The sole update provided by [plaintiff's accountant] since the parties' appearance before the court on December 6, 2019, is an executive summary, dated January 15, 2020, on plaintiff's cash flow analysis from 2009 through 2013 and 2017 and 2018.

Additionally, the judge observed plaintiff's supplemental certification included copies of three emails from different sources who notified plaintiff they could not offer him employment at that time. The judge found

> plaintiff failed to comply with N.J.S.A. 2A:34-23(l) as he has not supplied the court with a detailed comparison and analysis of his economic and non-economic

6

benefits in 2015 and now. Plaintiff's supplemental certification instead referenced [his accountant's] summary analysis of previously submitted reports without additional information. Therefore, the court denies plaintiff's motion to modify or terminate alimony.

We distill plaintiff's arguments on appeal to five main issues. First, he contends Judge Isenhour erred in denying him a plenary hearing even though plaintiff provided sufficient information to warrant a hearing to address the facts in dispute. Second, he argues the judge did not properly assess his ability to pay support. Third, he contends the judge should have granted him a reduction in his life insurance obligation based on his future support obligations. Fourth, he argues the judge erred in concluding the 2015 consent order took into account "consideration for [the children's] college attendance." Finally, he maintains the judge erred in compelling him to pay defendant's legal fees. These arguments are unavailing. We address plaintiff's first four arguments before separately considering his counsel fee argument.

Our review of a trial judge's fact-finding function is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). A judge's fact-finding is "binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). "Because of the family courts' special jurisdiction and expertise in family

7

matters, appellate courts should accord deference to family court factfinding." Id. at 413. A judge's purely legal decisions, however, are subject to our plenary review. Crespo v. Crespo, 395 N.J. Super. 190, 194 (App. Div. 2007) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

New Jersey "has a strong public policy favoring [the] enforcement of agreements." Massar v. Massar, 279 N.J. Super. 89, 93 (App. Div. 1995) (citing Dep't of Pub. Advoc. v. N.J. Bd. of Pub. Utils., 206 N.J. Super. 523, 528 (App. Div. 1985)). This is particularly true in family actions, where "[t]he law grants particular leniency to agreements made in the domestic arena" and allows "judges greater discretion when interpreting such agreements." Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992) (citing N.J.S.A. 2A:34-23).

"Settlement of disputes, including matrimonial disputes, is encouraged and highly valued in our system." Quinn v. Quinn, 225 N.J. 34, 44 (2016) (citing Konzelman v. Konzelman, 158 N.J. 185, 193 (1999)). "Marital agreements . . . are approached with a predisposition in favor of their validity and enforceability" so long as the agreement is voluntary and deemed "fair and equitable." Massar, 279 N.J. Super. at 93 (citing Petersen v. Petersen, 85 N.J.

638, 642 1301 (1981)).  Our Supreme Court "has observed that it is 'shortsighted and unwise for courts to reject out of hand consensual solutions to vexatious personal matrimonial problems that have been advanced by the parties themselves.'"  Quinn, 225 N.J. at 44 (quoting Konzelman, 158 N.J. at 193).  Thus, "fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed."  Ibid. (quoting Konzelman, 158 N.J. at 193-94).

Support orders are subject to review and modification upon a showing of "changed circumstances."  Lepis v. Lepis, 83 N.J. 139, 146 (1980).  "When the movant is seeking modification . . . that party must demonstrate that changed circumstances have substantially impaired the ability to support himself or herself."  Id. at 157.

As we have noted, and Judge Isenhour properly recognized, the application of a self-employed movant who seeks to modify alimony based on an involuntary reduction in income "must include an analysis that sets forth the economic and non-economic benefits the party receives from the business, and which compares these economic and non-economic benefits to those that were in existence at the time of the entry of the order."  N.J.S.A. 2A:34-23(l).  See also Beck v. Beck, 239 N.J. Super. 183, 190 (App. Div. 1990) (An assessment

of changed circumstances requires a judge to compare the obligor's current financial situation against the obligor's financial situation when the order to be modified was entered).  Also, "[w]hen the movant is seeking modification of child support, the guiding principle is the 'best interests of the children.'" Lepis, 83 N.J. at 157 (citing Hallberg v. Hallberg, 113 N.J. Super. 205, 209 (App. Div. 1971)).

A movant seeking to modify his or her support obligations bears the burden of proof that a modification is warranted.  Ibid.  A plenary hearing is only required when a party demonstrates "the existence of a genuine issue as to a material fact."  Id. at 159.  Once the moving party "has demonstrated a prima facie showing of a substantial change of circumstances . . . then the court will order the opposing party to file a copy of a current case information statement" and provide other financial information.  R. 5:5-4(a)(4); Zazzo v. Zazzo, 245 N.J. Super. 124 (App. Div. 1990).

In Lepis, the Court recognized a non-exhaustive list of factors that give rise to changed circumstances warranting modification of a support obligation. 83 N.J. at 151-52.  Changed circumstances may "include 'an increase in the cost of living, an increase or decrease in the income of the supporting or supported spouse, cohabitation of the dependent spouse, illness or disability arising after

10

the entry of the judgment, and changes in federal tax law.'" Quinn, 225 N.J. at 49 (quoting J.B. v. W.B., 215 N.J. 305, 327 (2013)).

A mere showing of an obligor's reduction in income is not dispositive. In fact, current earnings have never been viewed as "the sole criterion [upon which] to establish a party's obligation for support." Weitzman v. Weitzman, 228 N.J. Super. 346, 354 (App. Div. 1988). A party's "potential to generate income is a significant factor to consider when determining his or her ability to pay [support]." Miller v. Miller, 160 N.J. 408, 420 (1999).

Generally, a payor must show that there has been a "substantial, non-temporary change[] in [the payor's] ability to support [himself or herself] or pay support." Gordon v. Rozenwald, 380 N.J. Super. 55, 67-68 (App. Div. 2005). Indeed, "[c]ourts have consistently rejected requests for modification based on circumstances which are only temporary or which are expected but have not yet occurred." Lepis, 83 N.J. at 151. There is no "brightline rule by which to measure when a changed circumstance has endured long enough to warrant a modification of a support obligation." Larbig v. Larbig, 384 N.J. Super. 17, 23 (App. Div. 2006). "[S]uch matters turn on the discretionary determinations of Family Part judges, based upon their experience as applied to all the relevant circumstances . . . ." Ibid. As we noted in Larbig, "what constitutes a temporary

11

change in income should be viewed more expansively when urged by a self-employed obligor," because such an obligor is "in a better position to present an unrealistic picture of his or her actual income than a W-2 wage earner." Ibid.

Here, we are convinced Judge Isenhour correctly concluded plaintiff failed to establish a prima facie case of changed circumstances from the time the parties entered into their 2015 consent order to the date of his 2019 modification application. As the judge observed at oral argument in December 2019, and again in his March 2020 cogent opinion, plaintiff's submissions did not include an analysis comparing his economic and non-economic benefits from December 2015 to those enjoyed at the time of his application in 2019. Moreover, at oral argument, plaintiff referred us to his accountant's letter of January 15, 2020, contending the expert report provided the requisite comparative analysis to warrant a plenary hearing in this matter. Plaintiff is mistaken. His expert's report reviewed plaintiff's pre-tax cash flow for 2009 through 2013 for reasons we cannot fathom, given that this timeframe was not relevant to what Judge Isenhour had to decide. The 2020 report also included the "economic and non-economic components" of plaintiff's pre-tax cash flow for 2017 through 2018. Missing, of course, was an analysis of plaintiff's economic and non-economic benefits in 2015 as compared to those benefits at the time plaintiff filed his 2019

modification application.  Under these circumstances, plaintiff did not establish a basis to be relieved from the support and life insurance obligations outlined in the 2015 consent order, nor did he demonstrate an entitlement to a plenary hearing.

Lastly, we perceive no basis to disturb the trial court's modest award of counsel fees to defendant.  Rule 5:3-5(c) requires a judge to consider the following factors in deciding to award counsel fees in a matrimonial action:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (2) the reasonableness and good faith of the positions advanced by the parties; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
>
> [Strahan v. Strahan, 402 N.J. Super. 298, 316-17 (App. Div. 2008) (quoting R. 5:3-5(c))(emphasis supplied).]

An award of counsel fees should only be disturbed on the "rarest occasion" based on a "clear abuse of discretion."  Id. at 317 (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

Here, Judge Isenhour found plaintiff "acted unreasonably as he did not properly submit a supplemental certification as ordered by the court."  Further,

13

the judge concluded defendant "prevailed in her cross-motion" to enforce plaintiff's support obligations. We also observe that paragraph 10.5 of the MSA provided: "Should either the husband or wife fail to abide by the terms of this agreement, the defaulting party shall indemnify the other for all reasonable expenses and costs, including attorney's fees, incurred in successfully enforcing this agreement." Given this language in the MSA, which was not modified under the 2015 consent order, and based on the results of the parties' cross applications, we are satisfied the judge did not abuse his discretion in awarding defendant $2500 in counsel fees.

In sum, we discern no basis to reverse the March 9, 2020 order. Indeed, the record amply supports Judge Isenhour's factual findings and, in light of those findings, his legal conclusions are sound.

We find plaintiff's remaining arguments to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION