**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1780-23

DAMIAN SCHWARTZ,

    Plaintiff-Appellant,

v.

DARLENE KAIGHN-SCHWARTZ,

    Defendant-Respondent.

_____

Submitted March 19, 2025 – Decided May 28, 2025

Before Judges Currier and Marczyk.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-0870-21.

The DiFazio Law Office, attorneys for appellant (Angela DiFazio, on the briefs).

Hovanec & Divito, LLC, attorneys for respondent (Jayde Divito, on the brief).

PER CURIAM

Plaintiff Damian Schwartz appeals from the Family Part's January 5, 2024 order granting defendant Darlene Kaighn-Schwartz's motion to enforce various provisions of the parties' Marital Settlement Agreement (MSA) and denying his cross-motion to enforce the MSA. Following our review of the record and the applicable legal principles, we affirm in part, vacate in part, and remand for further proceedings.

I.

The parties were married in April 2001 and had two children: Ian, born in 2003, and Hayley, born in 2005. In June 2022, the parties were granted a dual judgment of divorce and entered into an MSA. At the time the parties executed the MSA, Ian was enrolled as a sophomore in college out of state and residing on campus, while Hayley was a senior in high school. Currently, both children attend the same college and reside there during the academic year.

Since the divorce, the parties both moved multiple times to enforce the MSA. Plaintiff twice moved to modify his child support and alimony obligations because he temporarily lost his job. The court denied those applications in January and March 2023. Meanwhile, in March 2023, the court granted defendant's motion to enforce the MSA requiring plaintiff to pay defendant his share of the children's unreimbursed healthcare expenses, cell

2

phone bills, and travel expenses. The court further ordered plaintiff to obtain additional life insurance in compliance with the MSA.

In November 2023, defendant again moved to enforce various provisions of the MSA. Specifically, she sought reimbursement from plaintiff in the amount of $26,379.36, which represented the following expenses: (1) $1,723.55, plaintiff's 60% share of the children's automobile insurance; (2) $270, plaintiff's 60% portion of "school-related" costs for Hayley; (3) $1,347.65, plaintiff's 60% share of the costs of unreimbursed healthcare expenses incurred for the children; (4) $645.15, plaintiff's 50% share of Hayley's travel expenses to attend college orientation; (5) $704.21, plaintiff's 50% share of the costs associated with Hayley's dormitory "supplies"; (6) $6,688.80, plaintiff's 50% share of the children's college-related expenses; and (7) $15,000, plaintiff's share of the uncovered college tuition for Ian.

Specifically, regarding the $15,000 contribution for Ian's tuition, defendant's certification stated the children do not qualify for financial aid or grants and that Ian received a FAFSA loan of approximately $5,500 per year. She certified "there is typically an outstanding tuition balance of approximately $18,000 per semester, or a total of $36,000 per year." Additionally, she stated Ian's off-campus housing expenses exceed $15,000 per year.

A-1780-23

According to defendant, "[p]laintiff refused to pay his $15,000 [share] toward Ian's tuition costs at the beginning of Ian's fall 2023 semester . . . ." She stated "[she] . . . incurred a Sallie Mae loan to cover [p]laintiff's share of Ian's uncovered costs for [the] [f]all 2023 semester (which was due in July 2023) . . . ." Defendant indicated "[she] co-signed the loan with Ian in order to obtain a lower interest rate."

Defendant further certified her attorney forwarded Ian's account portal to plaintiff in October 2023, reflecting the $17,500 loan from Sallie Mae which covered the $16,985 balance for the fall 2023 semester. Defendant's counsel also requested plaintiff pay his share toward Ian's spring semester by the December 2023 due date. Plaintiff's counsel responded in November 2023, advising that defendant did not take out a loan but rather co-signed Ian's student loan. Plaintiff's counsel also stated the MSA only requires the parties to contribute to college costs after all available student loans are exhausted and that Ian's loan covered the entire year's tuition.

Plaintiff cross-moved seeking to: (1) reduce his obligation to pay child support under the MSA based on his "permanent reduction in income" and "Hayley's residence away at college"; (2) modify his alimony obligation "in light of his permanent and substantial changed circumstances"; and (3) reduce his

A-1780-23

obligation to maintain life insurance, to coincide with the reduction in his spousal and child support obligations. Plaintiff further sought to require defendant to be solely responsible for out-of-pocket expenses that she incurred without first consulting with him.

Plaintiff certified he should not be required to reimburse defendant for the children's expenses because defendant unreasonably spent: $5,275.16 for the children to fly home for Thanksgiving and Christmas; $1,714.53 for Hayley's computer; and $1,769.74 for Ian's iPad. He also claimed he should not be responsible for reimbursing defendant $15,000 for the Sallie Mae loan because the loan was taken out by Ian and covered his tuition.

In January 2024, the court entertained oral argument. Defendant contended plaintiff owed her $26,379.36 for the expenses she incurred, and she submitted "hundreds of emails" that she sent to plaintiff as proof that she consulted with him and notified him of the expenses, which he either ignored or objected to.

Regarding the children's school-related expenses, defendant contended "[plaintiff] ha[d] been well aware of Ian's [c]ollege cost[s]" and that "[she] was forced to incur the Sallie Mae loan with Ian because [plaintiff] refused to pay his share." She also stated she incurred the rental housing costs, which has

5

remained the same since Ian enrolled in school. She asserted plaintiff is obligated to pay for these expenses pursuant to the MSA and noted plaintiff has the ability to pay because he has approximately $147,000 in his savings account according to his case information statement (CIS).

Plaintiff, in turn, contended the MSA provides that "[t]he children are to take out financial aid[,] grants, scholarships, and loans, and after those are applied, the parties are then responsible for up to $15,000 each." He argued defendant never consulted with him regarding the air travel expenses when the children flew home for Thanksgiving and Christmas, or for Hayley's MacBook Air and Ian's iPad.

Plaintiff asserted defendant's argument that she had to take out a loan to ensure Ian could continue in college was disingenuous. He argued Ian took out the student loan and that defendant received over $300,000 less than a year ago from the sale of the martial home and "could have taken out a Parent[ PLUS] loan . . . to cover her portion." The court noted defendant is the guarantor of the loan, to which plaintiff responded that Ian is responsible for the loan, and defendant made the decision to co-sign the loan, even though she did not have to do so because "[t]he parties would've just split the remainder" of the unpaid tuition.

A-1780-23

With respect to plaintiff's request to reduce his child support and alimony obligations, he asserted "child support has to be recalculated" because the MSA requires the parties to recalculate child support once Hayley resides at school. He also noted his income is approximately 50% less than the amount he previously earned because he lost his job in November 2023, where he earned a $189,000 salary "with substantial bonuses and perks." Plaintiff indicated he earns $150,000 a year at his current job but has not received any bonuses or perks.

In support of plaintiff's argument for a reduction in alimony and his life insurance obligation, he asserted that paying more than 50% of his net salary is "inequitable and unfair" because it "puts . . . defendant in a better financial position than [plaintiff] as the paying party." When plaintiff indicated his "[$100,000] bonuses . . . [and] stock options are gone," the court responded "you don't know what it's going to be in the future." The court questioned whether the reduction in plaintiff's income is temporary, to which plaintiff stated that "going from $300,000 a year to . . . $150,000 a year . . . is a permanent reduction." He further contended "[t]here's no such thing as permanent," but "14 months later [is] as close to permanent as you're going to get . . . ."

A-1780-23

Defendant, in turn, argued plaintiff failed to "demonstrate that he has experienced a change in circumstances that affects his ability to pay." She indicated plaintiff submitted proofs and conceded that he earns a net monthly income of $8,800. According to defendant, if the parties also accept that plaintiff receives $3,939 from his pension, he would be earning a total of $12,739 each month, which included his $2,500 monthly contribution to the children's college that he failed to pay.

Following oral argument, the court entered an order: (1) finding plaintiff in violation of litigant's right for his failure to abide by the terms of the MSA; (2) requiring plaintiff to pay defendant $26,379.36 within seven days of the order; (3) granting defendant's request that plaintiff provide proof of his life insurance policy or the bond posted to secure his life insurance obligations under the MSA; (4) awarding defendant $2,500 in attorney's fees; and (5) denying all other requests.

The court issued a written opinion accompanying the order. The court initially observed that plaintiff "repeatedly fail[ed] to substantiate his claims and . . . has been unable to prove . . . [d]efendant violated the MSA." It stated the parties agreed to consult with each other regarding the children's expenses. The court noted defendant made several attempts to communicate with plaintiff, but

plaintiff refused to cooperate and pay his share of the expenses and ignored defendant.

The court determined defendant is entitled to "the overdue reimbursements" totaling $26,379.36, which includes the $15,000 he failed to pay for Ian's schooling. It found the parties anticipated they would each contribute $15,000 towards Ian's school, and "[d]efendant was forced to co-sign a loan for . . . $15,000" when plaintiff failed to contribute toward Ian's sophomore year. The court acknowledged plaintiff's argument that this loan was anticipated under the MSA but found he was responsible for reimbursing the loan because, although Ian took out the loan, "nothing in the MSA . . . requires the children to take loans that must be co-signed, thus encumbering the parent with . . . debt."

However, the court determined the expenditures for the children's airfare and computers were excessive. It stated that going forward, plaintiff would only be responsible to pay his share of "entry level [computer or iPad] models." Additionally, the court stated airfare for the children's holiday travels must "be purchased at least thirty days prior to the travel and for a coach seat."

The court rejected plaintiff's request for "nearly a 70% reduction" of his alimony and child support obligations because he failed to meet his burden of

proving a substantial change in circumstances. The court noted that although plaintiff earns less than he did at his prior job, he admitted that he is entitled to performance and collection bonuses. It found "[p]laintiff is not capped at $150,000 per year" and is expected to earn an amount similar to what he earned when the parties entered into the MSA. The court also examined plaintiff's current financial situation and determined he can meet "the obligation he bargained for, and that the loss of income remains as of this writing a temporary circumstance."

Finally, the court partially awarded defendant's request for attorney's fees. The court found "[t]his motion was largely necessitated by [p]laintiff's failure to meet his obligations under the MSA," which "should have been unnecessary." The court did not hold plaintiff responsible for all the attorney's fees because he had the right to seek a downward modification of his support obligations.

## II.

On appeal, plaintiff argues the trial court erred in failing to grant his requests for enforcement of the MSA relating to the children's "exorbitant expenses" when he was not consulted and did not consent to the expenses. He further asserts the court erred in granting defendant's request for reimbursement of the $15,000 tuition payments that were paid toward Ian's student loan

A-1780-23

pursuant to the MSA. Plaintiff further argues the court erred in denying his request for a recalculation of child support in accordance with the MSA. He also maintains the court erred in partially granting defendant's request for counsel fees. Lastly, he claims the court erred in denying his request for a reduction of spousal support and his obligation to provide life insurance in light of the substantial change in circumstances involving his new employment.

An appellate court defers to the family court's findings of fact "when supported by adequate, substantial, credible evidence" in the record. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). This court affords special deference in light "of the family courts' special jurisdiction and expertise in family matters." Id. at 413. Further, discretionary decisions of the family court are afforded "great deference." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012). However, the family court's "legal conclusions, and the application of those conclusions to the facts," are reviewed de novo. Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013).

As is the case with any contract, this court reviews a settlement agreement de novo because the interpretation of a contract is a legal question. Quinn v. Quinn, 225 N.J. 34, 45 (2016) ("An agreement that resolves a matrimonial dispute is no less a contract than an agreement to resolve a business dispute.").

"Accordingly, we pay no special deference to the [family] court's interpretation and look at the contract with fresh eyes." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011).

"When reviewing decisions granting or denying applications to modify child support, we examine whether, given the facts, the trial judge abused his or her discretion." J.B. v. W.B., 215 N.J. 305, 325-26 (2013) (quoting Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012)). "The trial court's 'award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice.'" Id. at 326 (quoting Foust v. Glaser, 340 N.J. Super. 312, 315-16 (App. Div. 2001)).

The decision of a family court to modify alimony is reviewed under an abuse of discretion standard. Spangenberg v. Kolakowski, 442 N.J. Super. 529, 536 (App. Div. 2015); Larbig v. Larbig, 384 N.J. Super. 17, 23 (App. Div. 2006). The standard of review of an alimony award is narrow—a trial court has broad, but not unlimited, discretion, which must take into account the factors set forth in N.J.S.A. 2A:34-23(b) and case law. See Crews v. Crews, 164 N.J. 11, 24-25 (2000).

A.

Plaintiff argues the court misused its discretion in ordering plaintiff to reimburse defendant for the children's expenses. He contends the court erred in denying his request to enforce paragraph 25 of the MSA and that defendant should be solely responsible for those expenses she incurs unilaterally. He also avers the court erred in granting defendant "full reimbursement of the exorbitant expenses she incurred without consultation or consent."

Defendant counters the family court properly enforced the clear language in paragraph 25 of the MSA and rejected plaintiff's assertion that the parties must agree to the expenditures in advance and that he can object to every expense. Defendant contends she documented her efforts to communicate with plaintiff about the children's expenses. She asserts the record supports the court's finding that plaintiff ignored defendant's attempts to communicate, refused to cooperate, and failed to pay his share of the children's expenses.

Matrimonial settlement agreements are governed by basic contract principles and, as such, courts should discern and implement the parties' intentions. J.B., 215 N.J. at 326. "[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Quinn, 225 N.J. at 45. "[A] court should not rewrite a contract or grant a better deal than that for which

13

the parties expressly bargained."  Ibid.  "At the same time, 'the law grants particular leniency to agreements made in the domestic arena,' thus allowing 'judges greater discretion when interpreting such agreements.'"  Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (quoting Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992)).

The language regarding child-related expenses under paragraph 25 of the MSA provides the parties expect that "the children will incur extraordinary expenses prior to their emancipation," such as "sports, enrichment programs, extracurricular activities, computer/laptop/tablet purchases, tutoring, school-related activities, automobile insurance, cell phone plans, automobile insurance and driver's license fees (such as registration)."  It further states "[t]he parties shall consult with one another regarding such expenditures[,] and they agree to act reasonably regarding same."  Additionally, "[a]ll such extraordinary expenses shall be paid by the parties with [plaintiff] responsible for sixty . . . percent and [defendant] responsible for the remaining forty . . . percent."

Plaintiff challenges defendant's spending $5,275.16 on plane tickets for the children to fly home on Thanksgiving and Christmas, $1,714.53 for Hayley's MacBook Air, and $1,769.74 for Ian's iPad, all of which he believes were unreasonable.

A-1780-23

The court observed plaintiff failed to demonstrate defendant violated the MSA and that he refused to cooperate and pay his share of expenses, and ignored defendant's attempts to communicate with him. We affirm regarding this aspect of the appeal essentially for the reasons expressed by the trial court. Given our deference to the court's factual findings, we conclude there was substantial evidence in the record to support the court's determination. In short, we discern no error in the court's findings.

B.

Plaintiff next argues the court misused its discretion by requiring plaintiff to reimburse defendant $15,000 for Ian's tuition under paragraph 29 of the MSA. He asserts the court should have construed paragraph 29 in consideration of the parties' intent to reduce their own liability for the children's college expenses. He also contends defendant failed to provide proof of the children's efforts to obtain loans, grants, and scholarships, which they are required to do under paragraph 29. He also alleges "the only fair and reasonable conclusion would be to require [Ian] to be responsible for the student loan that the parties agreed he would incur, and that he did incur, knowingly and voluntarily." He claims defendant did not "promote . . . financial responsibility for the child," but rather

15

assisted Ian in applying for the loan, co-signed it without plaintiff's knowledge or consent, and demanded plaintiff to pay his share.

Defendant, in turn, asserts the court properly interpreted paragraph 29 according to the parties' intent at the time they executed the MSA. She argues the parties anticipated and agreed on contributing $15,000 toward Ian's college expenses because Ian was enrolled in college when they entered into the MSA. Defendant also contends the court correctly found she was forced to co-sign the loan after plaintiff failed to pay his portion and that paragraph 29 does not require either party to co-sign loans.

Paragraph 29 of the parties' MSA states "Ian[] will be enrolling in his sophomore year [of college] in August of 2022" and has approximately $6,000 in his college savings account. Notably, the provision further provides:

> After available scholarships, grants, financial aid and/or student loans are exhausted, the parties agree that the funds in the aforementioned accounts (plus any gains on such sums) shall be first applied before either party is required to contribute to future college expenses. Thereafter, the parties shall contribute to any outstanding, uncovered college expenses with each party contributing fifty . . . percent. However, the parties' total contribution toward Ian's college tuition, activity/tuition fees and housing (on-campus and off-campus) shall not exceed $30,000 per year, which shall result in each party's contribution toward these outstanding costs as a maximum of $15,000 per year.

16

A-1780-23

We must address whether the MSA's requirement that all student loans must be exhausted and applied before the parties contribute $15,000 toward the outstanding balance includes the Sallie Mae loan.

Plaintiff acknowledges his responsibility to pay "up to $15,000 per year towards each of [the] children's college costs." Moreover, defendant's certification indicates the children do not qualify for financial aid or grants, but Ian received a FAFSA loan of approximately $5,500 per year. She certified plaintiff's refusal to contribute $15,000 toward the cost of Ian's fall 2023 semester forced Ian to take out a $17,500 loan with Sallie Mae, which she co-signed, to cover the outstanding balance. The record is unclear as to whether defendant made her $15,000 contribution in addition to co-signing for Ian's Sallie Mae loan, or whether defendant used the Sallie Mae loan in lieu of her $15,000 contribution under the MSA.

According to the plain language of the MSA, plaintiff has an obligation to contribute $15,000 toward Ian's college expenses only after all "available" student loans are exhausted and then applied to the balance. Thus, the Sallie Mae student loan should be applied to the tuition balance before either party is obligated to contribute. We are unpersuaded by defendant's argument that she

was "forced" to co-sign the loan. Rather, defendant could have filed a motion to enforce litigant's rights, as both parties have done since the MSA was entered.

The court found plaintiff was responsible for reimbursing defendant $15,000 for the loan because he did not contribute toward Ian's sophomore year, which forced defendant to co-sign the loan, and "[t]here is nothing in the MSA that requires the children to take loans that must be co-signed . . . ." Although plaintiff is responsible for contributing $15,000 toward any outstanding balance, the MSA does not require plaintiff to reimburse defendant for student loans taken out by the children, even if co-signed by a parent. Defendant may have assumed an obligation to repay the loan, however, she did not incur this expense in the same manner as if she had contributed her portion of Ian's tuition—up to a maximum of $15,000—out of her own funds. Unlike a Parent PLUS loan which a parent is solely responsible to repay, it may be that defendant is never responsible for this debt if Ian pays it off, thereby receiving a windfall if plaintiff must reimburse her in the amount of $15,000 that she never spent.

The court shall recalculate plaintiff's college contribution consistent with his MSA obligations. The MSA did not contemplate a party that co-signs a loan as fulfilling their obligation of contributing up to $15,000 per year. Accordingly, we conclude the trial court erred in requiring plaintiff to pay the

18

$15,000 prior to the exhaustion of available student loans. We remand for the court to consider the total cost of tuition for the semester at issue, including the housing expenses, which were not specifically addressed, and apply the student loans to the balance, and then assess the parties their fifty percent portion of the remaining balance, if any, capped at their $15,000 per year obligation.

C.

We next turn to plaintiff's argument that the court erred in denying his request to recalculate his child support obligation. He asserts paragraph 23 of the MSA does not require him to establish a change in circumstances because the only condition for recalculation under this provision is Hayley's residing at college.

Defendant asserts the court did not misuse its discretion in denying plaintiff's request to reduce his child support obligation and properly found plaintiff's financial situation did not warrant a downward modification. She also contends plaintiff offered no evidence that Hayley's expenses have lessened due to her living at college. Defendant further argues plaintiff's CIS demonstrates he can maintain his personal expenses and the agreed-upon support obligations.

Where a party seeks a modification of child support, the court ordinarily must first determine whether the moving party has made a prima facie showing

of changed circumstances. R.K. v. F.K., 437 N.J. Super. 58, 62 (App. Div. 2014). However, "[a] basic tenet of contract interpretation is that contract terms should be given their plain and ordinary meaning." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 321 (2019). To that end, courts must "give a faithful and logical reading to the words chosen by the parties to the agreement." GMAC Mortgage, LLC v. Willoughby, 230 N.J. 172, 183 (2017). Courts generally construe "the word 'shall' . . . to be mandatory and the word 'may' permissive or directory." No Illegal Points, Citizens for Drivers Rights, Inc. v. Florio, 264 N.J. Super. 318, 329 (App. Div. 1993).

Here, the court misapplied its discretion in denying plaintiff's request to recalculate child support. Paragraph 23 of the MSA states, "[i]n the event that Hayley resides on campus for college, the parties shall recalculate child support based upon their respective financial circumstances at the time." (Emphasis added).

Although a party seeking modification must generally prove a change in circumstances, the inclusion of the word "shall" in the MSA requires a recalculation of child support contingent on Hayley's residing at college. That is, the MSA indicates the parties intended to recalculate child support when

Hayley went to college, thereby overriding the need for plaintiff to establish a change in circumstances.

The court failed to address this MSA provision and erred in denying plaintiff's request to recalculate child support. Instead, the court denied plaintiff's request for a recalculation based on his failure to establish a change in circumstances. Hayley's living away at college satisfied the only condition required under the MSA's mandatory requirement that the parties recalculate child support. Therefore, plaintiff is entitled to have his child support obligation recalculated.

## D.

Plaintiff next asserts the trial court erred in denying his request to reduce his alimony and life insurance obligations. He asserts the judge disregarded that he reduced his personal expenditures to ensure he could pay the court-ordered amount but rather used this against him to deny a downward modification.

Defendant, in turn, argues the court did not misuse its discretion in denying plaintiff's request to recalculate child support based on his failure to demonstrate a substantial change in circumstances. She contends the court properly found plaintiff did not submit any evidence establishing his inability to

pay his support obligations. She also asserts the total value of plaintiff's current assets are equal to the value of his assets at the time of the parties' divorce.

When a supporting spouse seeks a downward modification of an alimony award, that party must show "changed circumstances have substantially affected his or her ability to support himself or herself and the supported spouse." Crews, 164 N.J. at 30-31. Because "the central issue is the supporting spouse's ability to pay," their "potential to generate income is a significant factor to consider when determining his or her ability to pay alimony." Miller v. Miller, 160 N.J. 408, 420 (1999). Courts will evaluate "the supporting spouse's income earned through employment[,] . . . [r]eal property, capital assets, investment portfolio, and capacity to earn." Id. at 421.

A movant's changed circumstances is measured from those existing when the prior support award was fixed. Beck v. Beck, 239 N.J. Super. 183, 190 (App. Div. 1990). Notably, our "[c]ourts have consistently rejected requests for modification based on circumstances which are only temporary or which are expected but have not yet occurred." Lepis v. Lepis, 83 N.J. 139, 151 (1980). "There is, of course, no brightline rule by which to measure when a changed circumstance has endured long enough to warrant a modification of a support obligation." Larbig, 384 N.J. Super. at 23. However, "[a] prima facie showing

22

of changed circumstances must be made before a court will order discovery of an ex-spouse's financial status" or a plenary hearing.  Lepis, 83 N.J. at 157.

The parties' MSA required plaintiff to "maintain . . . life insurance . . . in the amount of $750,000" and pay $3,700 per month in alimony for a period of ten years, which was calculated based on his financial situation at the time the parties executed the MSA.  In addressing plaintiff's request to reduce these obligations, the court properly considered the primary issue of his ability to pay, as well as his current financial circumstances.  See Crews, 164 N.J. at 30-31; Miller, 160 N.J. at 420-21.

Although plaintiff asserts he earns less income than he did prior to the divorce, the court found plaintiff admitted that he is entitled to collect bonuses and is expected to earn an amount similar to what he earned when the parties entered the MSA.  The court found an examination of plaintiff's financial circumstances indicates he can meet the obligations for which he bargained, and the loss of income remains temporary.  The court's conclusion that plaintiff failed to prove a substantial change in circumstances is sufficiently supported by the record.  Therefore, we conclude the court did not misapply its discretion in denying plaintiff's request to modify his spousal support and life insurance obligations.

23

E.

Finally, plaintiff contends the court misused its discretion in granting defendant's request for attorney's fees. Plaintiff contends the trial judge failed to address defendant's alleged violation of the MSA and thus assumed he acted in bad faith by refusing to make payments. Plaintiff maintains he did not act in bad faith because he had the right to request modification of child support based on Hayley's residing at college and to seek enforcement of the terms of the MSA. He also argues the court's statement of reasons for awarding attorney's fees failed to address the relevant factors under RPC 1.5(a), Rule 4:42-9, or Rule 5:3-5(c).

The award of attorney's fees in matrimonial matters rests within the sound discretion of the court. Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990). Determinations regarding attorney's fees will be disturbed "only on the rarest of occasions, and then only because of a clear abuse of discretion." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)). "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App.

Div. 2015) (quoting <u>Flagg v. Essex Cnty. Prosecutor</u>, 171 N.J. 561, 571 (2002)). Where a trial judge correctly applies the case law, statutes, and court rules governing attorney's fees, the fee award is entitled to an appellate court's deference. <u>Yueh v. Yueh</u>, 329 N.J. Super. 447, 466 (App. Div. 2000).

Because we have concluded the court erred in not recalculating plaintiff's child support obligation and because we are remanding for the court to address Ian's tuition-related issues, we vacate the trial court's attorney fee award. On remand, the parties may make the appropriate applications, if desired.

Affirmed in part, vacated in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1780-23